# LACLEDE BANK *v.* SCHULER.

# SCHULER *v.* LACLEDE BANK.

### APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MISSOURI.

Submitted January 7, 1887. — Decided March 7, 1887.

Without deciding the mooted question whether a check or draft of a person on a bank in which he has deposits operates as an equitable assignment of the fund so on deposit to the holder of the check to the amount of it, it is clear that such check or draft does not bind the fund in the hands of the bank until it has notice of the draft or check by presentation for payment, or otherwise.

Until then, other checks drawn afterward may be paid, or other assignments of the fund, or part of it, may secure priority by giving prior notice.

APPEAL and cross-appeal from a decree upon a bill in equity, filed by Schuler against the Laclede Bank. The case is stated in the opinion of the court.

*Mr. David P. Dyer* for Schuler.

*Mr. J. E. McKeighan* for the Laclede Bank and Craig.

MR. JUSTICE MILLER delivered the opinion of the court.

This is an appeal and cross-appeal from a decree of the Circuit Court of the United States for the Eastern District of Missouri.

Harrison B. Schuler, a citizen of the state of Kansas, brought his bill in that court against the Laclede Bank, a corporation under the laws of the state of Missouri, and J. T. Craig, a citizen of the state of Texas. The substance of the bill is, that the plaintiff is the owner and holder of a draft, or bank check, drawn by C. W. Israel & Co. on the Laclede Bank, for the sum of $11,250.00, dated at Henrietta, Texas, October 20, 1885, in favor of the plaintiff, which was duly presented for payment on the 26th day of that month; and

that payment was refused, as the Laclede Bank alleged, on
the ground that C. W. Israel & Co., the drawers of the draft,
had, on October 24, 1885, made an assignment under the laws
of Texas for the benefit of their creditors, of which the said
Laclede Bank had been advised by telegraph. The bill pro-
ceeds upon the idea that there were funds in the hands of the
Laclede Bank to the credit of C. W. Israel & Co. on the pre-
sentation of said check for payment, which ought to be applied
for that purpose, and charges that, notwithstanding the gen-
eral assignment for the benefit of creditors made by C. W.
Israel & Co. on October 24, 1885, the check in question, made
in favor of the plaintiff on October 20, 1885, was an assign-
ment or appropriation of so much of those funds to the
benefit of complainant which he is entitled to enforce in this
suit.

J. T. Craig, who had become substituted for Davidson, the
assignee of C. W. Israel & Co., was also made a party to the
suit, and appeared and filed an answer.

The answer of the Laclede Bank, while admitting most of
the statements made in the bill, is very long and recites many
things not material to the issue as we look upon it, but relies
upon two substantial defences to the suit. The first of these
is, that on the morning of the 26th day of October, 1885, it
received the following telegram from C. W. Israel & Co.:
" Henrietta, Texas, 24, [meaning the 24th of October,] Laclede
Bank, St. L.: We assigned this day in favor of S. Davidson;
hold funds subject to his order. C. W. Israel & Co." It alleges
that this telegram was forwarded to the bank as a night
message on Saturday night, and, although duly received at
the telegraph office, was only delivered at 8 o'clock on Mon-
day morning, and that the check in favor of complainant was
presented at the opening of the bank at 10.15 on the same
morning, which was the first notice that they had of it. The
answer insists that the general assignment, with the notice of
it by telegraph, was a complete revocation of the Schuler
check, as well as all other checks drawn against this defendant
by C. W. Israel & Co., and that the assignment, with this prior
notice to the bank, vested in the assignee the better right to

any funds of said C. W. Israel & Co. in the hands of the bank. The answer also sets up transactions between C. W. Israel & Co. and the bank by which said C. W. Israel & Co. would be indebted on a settlement of the transactions between the two banks to the Laclede Bank in a sum beyond anything which they then held on deposit to the credit of C. W. Israel & Co. A part, however, of the transactions which go to make up this claim of set-off against C. W. Israel & Co. consisted of a note or notes discounted by the Laclede Bank for said C. W. Israel & Co., but which had not yet matured. The answer also sets up that C. W. Israel & Co. and the Laclede Bank were corresponding banks, one being in Texas and the other in St. Louis, Missouri, and that there had been a long course of dealing between them, and for this reason they had discounted the notes of C. W. Israel & Co. without any other sufficient security.

Craig, as assignee for C. W. Israel & Co., filed a separate answer, in which he sets out mainly the same matters found in the answer of the Laclede Bank, and he also makes a part of his answer the assignment of C. W. Israel & Co. to Davidson for the benefit of all their creditors.

There were no replications to either of these answers, but a stipulation is filed in regard to facts that are agreed upon by the parties, which closes with this paragraph: "All other facts in the bill and answer not inconsistent herewith are to be taken as part of this agreed statement."

The decree of the court was as follows:

"This cause came on for hearing at this term of the court on the bill of complaint, answers of defendants, and stipulations on file, and the court, being fully advised concerning the premises, finds that at the date of the presentation to the said Laclede Bank of the check set out in the bill of complaint there was to the credit of the account of C. W. Israel & Co. in said bank the sum of $5912.41 subject to the payment of said check, and that said check operated in equity as an assignment of said sum as against said defendants to said complainant.

"It is, therefore, ordered, adjudged, and decreed that the

said complainant have and recover of and from said defendants the said sum of $5912.41, together with interest at six per cent. per annum from the 26th day of October, 1885, amounting to $6073.99, and it is further ordered that execution issue therefor against said defendant, the Laclede Bank."

From this decree both Schuler and the bank appealed. The assignee, Craig, did not appeal.

The question of how far and under what circumstances a check of a depositor in a bank will be considered an equitable assignment to the payee of the check, of all or any portion of the funds or deposits to the credit of the drawer in the bank, is one which has been very much considered of late years in the courts, and about which there is not a unanimity of opinion. In this court it is very well settled that such a check, unless accepted by the bank, will not sustain an action at law by the drawee against the bank, as there is no privity of contract between them. *Marine Bank* v. *Fulton Bank*, 2 Wall. 252; *Bank of Republic* v. *Millard*, 10 Wall. 152; *First National Bank of Washington* v. *Whitman*, 94 U. S. 343.

But while this may be considered as the established doctrine of this court in regard to the rights of the parties at law, and is probably the prevailing doctrine in nearly all the courts, it is urged in this case and several respectable courts have so decided, that such a check is an appropriation of the amount for which it is drawn of the funds of the drawer in the hands of the bank. *Roberts* v. *Austin, Corbin & Co.*, 26 Iowa, 315; *Fogaties* v. *State Bank*, 12 Rich. (S. C.) Law, 518 [*S. C.* 78 Am. Dec. 468]; *Munn* v. *Burch*, 25 Ill. 32; *German Savings Inst.* v. *Adae*, 1 McCrary C. C. 501.

But however this doctrine may operate to secure an equitable interest in the fund deposited in the bank to the credit of the drawer after notice to the bank of the check, or presentation to it for payment — a question which we do not here decide — we are of opinion, that, as to the bank itself, the holder of the fund, and its duties and obligations in regard to it, the bank remains unaffected by the execution of such a check until notice has been given to it or demand made upon it for its payment.

In the case before us it is a conceded fact that before the bank had any knowledge or notice whatever of the check on which the plaintiff brings this suit, it had received a distinct notification from the drawer of that check that he had made a general assignment for the benefit of his creditors, with an express direction to hold the funds subject to the order of the assignee. Therefore, even if the check could be considered as an attempt on the part of C. W. Israel & Co. to assign or appropriate this amount in the hands of the bank to Schuler, the general assignment for the benefit of all their creditors of all their assets, including those in the hands of the bank, was made and brought to the attention of the bank with directions to turn them over to this assignee before it had any notice of the check in favor of Schuler.

The learned judge who decided the case on the circuit rested his judgment, in an opinion which is found in the record, on the proposition that, as between these two equities, namely, the equities of the general creditors under the assignment to Davidson, and this implied assignment in equity by the drawing of the check, the latter was superior. In this it would seem that he was somewhat influenced by the fact that he was enabled to trace the sources of some of the deposits to the credit of C. W. Israel & Co., in the Laclede Bank, to money which in a roundabout way had been collected for the payment of a debt to Schuler, and had finally been deposited to the credit of C. W. Israel & Co. in the Laclede Bank. But there is no allegation in the bill, nor any evidence in the testimony, nor any reason to believe that the bank knew anything of this connection between the sums received from several of the banks with which Israel was connected at different times and the debt of Schuler. This is expressly denied, and we can see no reason why the bank should be held in any way to regard the deposit made by C. W. Israel & Co. as, in law or in equity, funds in which Schuler had an interest. It must, therefore, be left entirely out of the argument in the contest between the bank and Schuler.

Apart from this matter, it is not easy to see any valid reason why the assignment of an insolvent debtor, for the equal

benefit of all his creditors, and all his property, does not confer on those creditors an equity equal to that of the holder of an unpaid check upon his banker. The holder of this check comes into the distribution of the funds in the hands of the assignee for his share of those funds with other creditors. The mere fact that he had received a check, a few days before the making of the assignment, on the bank, which had not been presented until after the general assignment was made and notified to the bank, does not seem, in and of itself, to give any such superiority of right. The assignment was complete and perfect, and vested in the assignee the right to all the property of the assignor immediately upon its execution and delivery, with due formalities, to the assignee, and the check of this assignee, like the check of Israel & Co., could have been paid by the bank with safety, if first presented. The check given by the same assignor a few days before was only an acknowledgment of a debt by that assignor, and became no valid claim upon the funds against which it was drawn until the holder of those funds was notified of its existence. This, we think, is the fair result of the authorities on that subject.

In the case of *Spain* v. *Hamilton's Administrator*, 1 Wall. 604, 624, this court says:

"Any order, writing, or act which makes an appropriation of a fund, amounts to an equitable assignment of the fund. The reason is, that the fund being a matter not assignable at law, nor capable of manual possession, an appropriation of it is all that the nature of the case admits of, and therefore it is held good in a court of equity. As the assignee is generally entitled to all th remedies of the assignor, so he is subject to all the equities between the assignor and his debtor. But in order to perfect his title against the debtor it is indispensable that the assignee should immediately give notice of the assignment to the debtor, for otherwise a priority of right may be obtained by a subsequent assignee, or the debt may be discharged by a payment to the assignee before such notice."

The same principle is also laid down in *Christmas* v. *Russell*, 14 Wall. 69; Story's Eq. Juris. §§ 1047, 1057, 1035a. See especially the authorities cited in note 1 to this latter section.

See also *Ward* v. *Morrison,* 25 Vt. 593, 599, and *Loomis* v. *Loomis,* 26 Vt. 198.

For these reasons we are of opinion that at the time of the presentation of the check to the bank, the bank held no funds subject to its payment, whether we consider the delivery of it by C. W. Israel & Co. to Schuler as intended to create an equitable assignment or not. An earnest effort is made in the argument of counsel in this court to impeach the general assignment as being void under the laws of Texas, where it was made, and also in the state of Missouri, where this fund was. As there is nothing in the statute of Missouri which would make this assignment absolutely void, and there is nothing brought to our attention to prove that it was void by the laws of Texas, and as the assignment, though mentioned in the original bill of complainant, is not assailed, nor any ground set forth to show its invalidity, we do not think there is any reason why it should not be held in this proceeding to be a valid assignment. As this assignment had the effect when the bank was notified of it to transfer to the assignee all right to any funds in its hands which Israel could assert, we need not consider the other questions connected with the case.

The result of these views is, that

*The decree against the bank must be reversed and the case remanded, with instructions to dismiss the bill.*