## GRIER *v.* BAYNES *et al.*

*(Circuit Court, N. D. New York.  June 5, 1891.)*

1. PATENTS FOR INVENTIONS—LICENSE—ASSIGNMENT.
   Where a patentee for a stipulated royalty granted an exclusive license to manufacture and sell under his patent, and subsequently, with the knowledge of his licensee, assigned for a valuable consideration a portion of the royalty, he cannot, by a secret assignment to the licensee, cut off the rights of such third party

2. SAME—NOTICE.
   A subsequent assignment by the licensee to a third party having knowledge of the facts will not free the patentee or said third party from the obligation to pay the portion of the royalties so conveyed. The latter took subject to the obligation to pay such royalty.

In Equity.

*James A. Allen*, for complainant.

*Edwin S. Jenney*, for defendants.

COXE, J. This action is to recover royalties at the rate of 35 cents for each set of springs sold by the defendants under letters patent No. 292,147, granted to Charles L. Thomas, January 15, 1884, for an improved spring for vehicles. On the 18th of February, 1885, the patentee and the defendant Baynes entered into an agreement by which the patentee granted to Baynes—subject to a prior license—an exclusive license under the patent, in consideration, among other things, of an agreement upon Baynes's part to push the sale of the patented springs and pay the patentee one dollar for every set of springs so manufactured and sold. On the 26th of May, 1885, the patentee assigned to his wife, Jeanette G. Thomas, all his right, title and interest to royalties under the preceding agreements. On the 24th of June, 1885, therefore, the defendant Baynes was obligated to pay Jeanette G. Thomas one dollar royalty upon every set of springs sold by him. On that day she and her husband, for a valuable consideration, assigned to the complainant a certain portion of the royalties under the Baynes license, namely, 35 cents for each set of springs sold, which sum was, by the terms of the agreement, to be deducted from the amount due her and paid by Baynes directly to the complainant. Baynes was present at the execution of this agreement and was aware of its contents. On the 15th of January, 1886, without the knowledge or consent of the complainant, Thomas and wife assigned the patent to Baynes and released him from all obligations to pay royalties under the former agreement.

The question, then, so far as the defendant Baynes is concerned, is this: Where a patentee has for a stipulated royalty granted a license to manufacture and sell under his patent and subsequently, with the knowledge of the licensee, assigns, for a valuable consideration, a portion of the royalty to a third party, can he, by a secret settlement with the licensee, cut off the rights of such third party? It is thought that he cannot upon the authority of the following decisions: *Lett v. Morris*, 4 Sim. 607; *Field v. Mayor, etc.*, 6 N. Y. 179; *Trist v. Child*, 21 Wall. 441; *Bank v. McLoon*, 73 Me. 499; *Risley v. Bank*, 83 N. Y. 318.

As to the liability of Baynes there can be no doubt. He had agreed to pay Thomas one dollar for each set of springs made and sold by him. When the complainant parted with valuable rights in exchange for 35 per centum of this royalty, which was thereupon solemnly set apart and assigned to him, Baynes was present. He had full knowledge of the agreement in all its particulars, including the stipulation that he should pay the royalty not to Mrs. Thomas but to complainant himself. In these circumstances he cannot rid himself of his obligation to the complainant by pleading a settlement with Thomas. Thomas could receipt for Baynes's debt to him, but not for Baynes's debt to the complainant.

The remaining question relates to the liability of the defendant the Buffalo Spring & Gear Company, a corporation organized by Baynes, and others, February 20, 1886. On the 12th of March, 1886, Baynes

transferred the patent in question to the Buffalo Company, which became his successor in business and has since carried on the manufacture and sale of the patented springs. At the time of the transfer the Buffalo Company had actual knowledge of the agreement of June 24, 1885, and of the provision that—

"The party of the first part, [Thomas,] his licensees, heirs, or assigns, shall pay to the party of the second part, [complainant,] his heirs or assigns, the sum of thirty-five cents royalty on each and every set of Thomas springs sold by the said party of the first part or by his licensees under and during the term of the Thomas patents."

It also had full notice of the rights of the complainant and of the obligation of its assignor, Baynes, to pay the royalty of 35 cents to the complainant. The company stands in no better position than Baynes stood in relation to the complainant. Baynes was equitably liable to pay royalty, and neither he nor the owner of the patent could destroy this obligation without the complainant's consent. The company having full knowledge of the relations of the parties acquired the rights possessed by its assignor, and these only. Thomas could not give the company a right to manufacture under the patent, for he had previously granted the exclusive right to Baynes. Baynes could not give an unconditional right, for he was under an agreement to pay royalty to the complainant. In other words, every set of springs made under the patent was charged with a royalty of 35 cents payable to the complainant. He had relinquished valuable rights in exchange for this royalty, and Thomas and Baynes had received the benefit. When, therefore, Baynes assigned to the Buffalo Company, the latter, having full knowledge of the facts, took subject to this obligation. To hold otherwise would be to say that the defendants can destroy the complainant's rights by a mere shuffle of agreements and a specious exchange of positions.

There should be a decree for an accounting substantially as demanded in the complaint. Whether the decree should extend beyond December 6, 1887, is a question which can be determined upon the settlement of the decree. I do not decide it now for the reason that considerations, which seem to me important, were not alluded to upon the argument and are but casually mentioned in the briefs. On the 16th of August, 1884, Thomas, the patentee, assigned to Victor and Hamilton Richardson a one-third interest in the patent in question. The assignment was restricted by many conditions, but it provided that upon the assignor's default in certain particulars, it should become absolute. There is a plausibility in the suggestions that it did become absolute and that the Richardsons, in December, 1887, held an unincumbered third interest in the patent. On the 6th of December, 1887, they assigned their interest to the Buffalo Company. If the Richardsons had the right to make and sell the patented spring, free from all obligation to pay royalty to the complainant, it is clear that when the defendant company purchased their title it acquired the same right.

The complainant is entitled to a decree for an accounting, with costs.