## FOURTH-STREET NAT. BANK v. YARDLEY.

(Circuit Court, E. D. Pennsylvania. May 23, 1893.)

No. 7.

BANKS AND BANKING—DRAFTS—NOT AN EQUITABLE ASSIGNMENT.

A draft given on a bank in the ordinary course of business does not constitute an equitable assignment of the fund; nor is it sufficient to constitute such an assignment that the draft is drawn by a bank against its reserve fund in another city, and is given in exchange for clearing-house certificates, upon the president's representation that it owes a heavy debt at the clearing house, which it is unable to meet, and his statement showing the amount of the reserve fund against which the draft is drawn.

In Equity. Suit by the Fourth-Street National Bank of the city of Philadelphia against Robert M. Yardley, receiver of the Keystone National Bank, to charge him as trustee of a fund. Bill dismissed.

Richard C. Dale, for complainant.

Read & Pettit, for respondent.

DALLAS, Circuit Judge. It is authoritatively settled for this court that a check or draft drawn upon a fund in the hands of a banker in the ordinary course of business is not an equitable assignment of such fund, or of any part of it. Bank v. Millard, 10 Wall. 152; Bank v. Schuler, 120 U. S. 511, 7 Sup. Ct. Rep. 644. The learned counsel for the complainant, while frankly admitting this to be the rule, insists that the giving of a check may, "in connection with other circumstances, be evidence of such equitable assignment." Conceding this, the question is as to the sufficiency of the circumstances relied on in this case; and these, according to the statement thereof in the complainant's brief, are as follows: On March 19, 1891, G. W. Marsh, the president of the Keystone National Bank, called at the Fourth-Street National Bank, and stated to the cashier that he had a heavy debt in the clearing house against his (Marsh's) bank, and that all its funds, or the greater part of them, were in New York,—so much so that it could not meet its debt in the clearing house,—and asked if the Fourth-Street National Bank would accept its (the Keystone's) draft against its reserve account in the New York bank for this sum of money, and give him clearing-house gold certificates. Mr. Marsh supported this statement by showing a memorandum giving the exact balance which the Keystone Bank had with the Tradesmen's National Bank of New York city,—a sum between $26,000 and $27,000. Upon this statement the Fourth-Street Bank gave to the Keystone Bank clearing-house certificates for $25,000, and accepted a draft for the same amount drawn by the Keystone Bank on the Tradesmen's Bank of New York. The general ledger sheet of the Keystone Bank showed a balance to its credit with the Tradesmen's Bank at the close of business of March 19, 1891, after deducting this draft for $25,000, of $1,757.32.

Accepting for the present purpose this presentation of the facts, we have an express statement by the president of the Keystone Bank that a fund was provided for payment of the draft; but between a draft taken in reliance upon such a statement and an assignment of the particular fund, the distinction is obvious, and of the latter, or of any intent that the transaction should be in effect anything different from what it was in form, I perceive no indication whatever. It seems, too, that Marsh's statement that the Keystone Bank had between $26,000 and $27,000 with the Tradesmen's Bank was not true, and that the general ledger sheet of the Keystone Bank, to which reference has been made, was not correct; but inasmuch as, irrespective of these matters, the fundamental proposition upon which the case of the complainant rests cannot be sustained, no other question need be discussed.

The bill is dismissed, with costs.