**SPRINGER v. J. R. CLARK CO.**

No. 12546.

Circuit Court of Appeals, Eighth Circuit.

Nov. 9, 1943.

Benedict Deinard, of Minneapolis, Minn. (George B. Leonard, Arthur L. H. Street, and Leonard, Street & Deinard, all of Minneapolis, Minn., on the brief), for appellant.

Leavitt R. Barker, of Minneapolis, Minn. (Charles F. Noonan, Henry Halladay, and Dorsey, Colman, Barker, Scott & Barber, all of Minneapolis, Minn., on the brief), for appellee.

Before WOODROUGH, THOMAS, and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

This is a suit by Rebecca G. Springer as plaintiff against The J. R. Clark Company as defendant for an accounting for royalties on patented ironing boards manufactured and sold by the defendant during the period from November 15, 1934, to March 1, 1938. Judgment was rendered for the defendant and the plaintiff appeals. The opinion of the trial court is reported in Springer v. J. R. Clark Co., D.C., 46 F.Supp. 54. Jurisdiction is predicated upon diversity of citizenship and the requisite amount in controversy.

The plaintiff is the beneficiary of royalties reserved by the inventor in a contract for an assignment of his interest in the patents. The defendant is a licensee under a remote assignee of the patents. The plaintiff does not claim under a recorded lien nor upon an express contract with the defendant. She bases her claim against the defendant upon (1) an equitable right in the nature of (a) an equitable assignment or of (b) an equitable lien, or upon (2) a novation resulting from the circumstances and the relations of the parties. The defendant denies the existence of such a right or of any obligation on its part. None of

the material evidentiary facts are in dispute. Most of them were stipulated. The controversy concerns the proper inferences and the legal conclusions to be drawn from conceded facts.

The adverse determination of the trial court in respect of each element of the plaintiff's claim can not be reversed unless the evidence clearly establishes one or more of plaintiff's alleged contentions. The nature of the issue makes necessary a review of the pertinent facts.

The plaintiff is the surviving widow of the inventor, Aaron M. Springer. Prior to 1918 Springer had devised and applied for patents for certain improvements in ironing tables or boards. On February 28, 1918, he executed two instruments in writing in favor of Oregon Woodenware Mfg. Co., an Illinois corporation, herein called Oregon. The first of such instruments was an agreement to transfer to Oregon his "entire right, title and interest in and to" three inventions for improvements in ironing boards and his applications for patents thereon. The contract then provided: "In consideration whereof, the said party of the first part [Oregon] hereby agrees for itself, its successors and assigns, to pay to Rebecca G. Springer, the wife of Aaron M. Springer, * * * her heirs or assigns, a royalty of two cents (2¢) for each and every ironing board or folding ironing table, which the said party of the first part may hereafter manufacture and sell, or cause or permit to be manufactured or sold * * * under any Springer patents owned or controlled * * * by said party of the first part, * * * said royalty shall be paid during the life or lives of each and every patent * * * to be issued or heretofore issued * * * and assigned or agreed to be assigned to said party of the first part." The contract provided that payments were to be made monthly on the 10th of each month.

This contract was not recorded in the Patent Office.

The second instrument executed by Springer on February 28, 1918, was an assignment to Oregon of the three applications for patents referred to in the first instrument, transferring to Oregon "the entire undivided and unincumbered right to said inventions." This instrument was recorded in the Patent Office, and two patents were thereafter issued to Oregon upon two of the applications.

One George H. Kleinsorge owned all of Oregon's stock; and some time after February, 1918, he began the manufacture of the patented articles in the state of Oregon. In 1920 he moved the business to Waukegan, Illinois, where he organized under Illinois law the Rid-Jid Products Corporation (hereinafter called Illinois), and caused the patents to be assigned to it on July 14, 1920. Such assignments were recorded in the Patent Office. The new corporation took over Oregon's assets and assumed its liabilities. Thereafter the new corporation manufactured the patented articles.

On March 5, 1921, Illinois entered into a manufacturing and marketing contract with the defendant, The J. R. Clark Company. This contract was cancelled, and a new contract between the same parties was entered into on September 15, 1921, by the terms of which the defendant was granted an exclusive ten-year license to manufacture and sell ironing tables under the patents in consideration of the monthly payment to Illinois of a royalty of two dollars per dozen ironing tables. In this contract title to the patents was warranted to be absolute and unencumbered. The business was then moved to Minneapolis, Minnesota.

On January 20, 1922, Illinois, to secure a $6,000 loan, mortgaged to the defendant all of its interest in two of the Springer patents. The mortgage was made subject "to a certain royalty agreement between Aaron R. Springer and Oregon Woodenware Manufacturing Company, dated February 28, 1918, which shall likewise at all times hereafter remain in full force and effect." The mortgage provided further that in case of default "this conveyance shall become absolute * * * subject only to said Springer royalty agreement."

From September 15, 1921, the date of the contract between Illinois and the defendant, until April 15, 1922, the defendant paid the $2 per dozen royalty to Illinois. During this period Illinois failed to pay the reserved royalty to the plaintiff under the contract of February 28, 1918. Beginning in October, 1921, the Springers without success made demand through the defendant Clark Company upon Illinois for payment of the delinquent royalties. In February, 1922, the claim was placed in the hands of a Minneapolis lawyer for collection. He contacted both Kleinsorge, own-

er of Illinois, and the Clark Company in an effort to collect for the Springers. Failing to obtain payment he brought suit against Illinois in the state court in April, 1922, and garnished the Clark Company. On April 29, 1922, Illinois made a proposal of settlement to the Springers' attorney as follows: "The Rid Jid Products Company, a corporation, will authorize in writing the J. R. Clark Company of Minneapolis, to pay to Mrs. Springer 24¢ for every dozen boards sold from April 1st, 1922, and thereafter. This money will be sent direct by the Clark Company to Mrs. Springer, each month, together with a statement showing the number of boards manufactured."

This proposal was accepted, and on May 15, 1922, Illinois sent the following letter to the Clark Company:

"J. R. Clark Company,
     "Minneapolis, Minn.
"Gentlemen:

"You have been authorized by the Board of Directors of the Rid-Jid Products Corporation to pay to Aaron M. Springer and Rebecca Springer, his wife, a royalty of two cents (2¢) per board on each and every Rid-Jid or Springer ironing board sold by your Company, which sum shall be deducted from the amount of royalty due our Company under its contract with you. Receipts evidencing the amount of royalties paid should be taken from the Springers.

"This communication is your authority for making the payments as above set forth.

          "Very truly yours,
          "Rid-Jid Products Corporation,
          "By  G.  H.  Kleinsorge, President,
               "Leonard L. Cowan, Secretary."

Before accepting the proposal of settlement of April 29, 1922, Springers' attorney testified that he talked to Mr. Clark of the Clark Company and that "they accepted the proposals." This testimony does not appear to have been denied. The suit in the state court seems never to have been dismissed of record. Plaintiff claims that the authorization in the letter of May 15, 1922, was never revoked. The defendant continued to pay the royalties to the plaintiff, or to her husband, until November, 1934.

The contract of February 28, 1918, by the terms of which Oregon agreed to pay the royalties reserved "to Rebecca G. Springer, wife of Aaron M. Springer", has not been modified or amended; but upon request of the Springers the royalties were paid sometimes to the husband and other times to Mrs. Springer.

In 1930, Illinois was succeeded by a new corporation, Rid-Jid Products, Inc., a Delaware corporation (hereinafter called Delaware), owned by the same party who owned its predecessors. The new corporation took over the assets of Illinois and assumed its liabilities. The defendant continued to pay the royalties to plaintiff, as stated above; and it was stipulated that Delaware "has never instructed defendant not to pay directly to plaintiff 24¢ per dozen boards."

On June 1, 1922, Illinois and the defendant modified their contract of September 15, 1921. On March 1, 1924, Illinois wrote the following letter to the defendant:

"The J. R. Clark Co.,
"Minneapolis, Minn.
"Gentlemen:

"On and after this date, you will please mail Royalties of $.24 per dozen to Aaron M. Springer direct on all Rid Jid and Springer Ironing Tables, as per our contract with you, and mail the balance of $1.76 per dozen to Rid-Jid Products Corporation, 1309 Kesner Building, Chicago, Ill.

"This cancels all previous instructions to you covering payment and distribution of Royalties.

          "Yours truly,
          "The Rid Jid Products Corporation,
          "By G. H. Kleinsorge, President."

On July 12, 1928, Illinois and defendant entered into a contract providing that upon the expiration of the ten-year contract of September 15, 1921, the license under said contract should remain operative until the end of the life of any letters patent owned or controlled by the corporation, but changing the royalty to be paid during the extended period from $2 per dozen boards to $1.50 per dozen.

On June 1, 1931, the Delaware corporation, successor of the Illinois corporation, as owner of the patents, and the defendant entered into a new contract, cancelling the former license contracts and changing their terms in several respects, but continuing the exclusive license to defendant to manufacture and sell the patented articles, for a percentage of the net returns instead of for $1.50 per dozen tables.

Paragraph 9 of this contract provided: "Hitherto, under the instructions from Rid-Jid Products, Clark Company have paid directly to Rebecca Springer part of the accruing royalties to the extent of Twenty-Four cents (24¢) per dozen boards, and Clark Company is hereby authorized to make such payments, under the present contract, until otherwise instructed by Rid Jid Products."

At the time defendant ceased making monthly payments to plaintiff in November, 1934, it notified plaintiff that it could no longer pay her because it had received notices from the Collector of Internal Revenue of large federal tax liens imposed against the Illinois and Delaware corporations, and that "We are expected and required under the circumstances to pay all royalties accruing direct to the Internal Revenue Department, St. Paul, Minn." In 1935 the Internal Revenue Service Department notified the defendant that, in its opinion, the tax lien was not effective as against the royalties due Mrs. Springer.

The defendant has not paid the royalties claimed by plaintiff to any one, and refuses to pay her for the alleged reason that it has claims against the Illinois and Delaware corporations which can be recovered only by offsets against accruing royalties. The trial court did not, however, adjudicate the validity of this claim to a right of set-off because it was not put in issue.

■ The plaintiff's contention that there was a novation of the contract of February 28, 1918, pursuant to which the defendant became bound to pay the royalties reserved in that contract and which Oregon agreed "for itself, its successors and assigns to pay to Rebecca G. Springer" is not supported by sufficient evidence to overcome the adverse finding of the court. Such contention is accordingly without merit.

The important question for determination is whether plaintiff has established against the defendant an equitable right in the nature of an equitable assignment of, or an equitable lien upon, the fund admittedly in the possession of defendant. If such an equitable right attached to that fund on May 15, 1922, and it has not since expired, been revoked, or lost in some other way, then plaintiff should be granted recovery.

In considering this matter three questions, the answers to which are in dispute, must be determined. They are: 1. Did the arrangement among the parties culminating in the letter of May 15, 1922, from Illinois, licensor, to the defendant, licensee, constitute an equitable right in the nature of an equitable assignment to the plaintiff or of an equitable lien upon a portion of the royalty accruing to the corporation under the license contract of September 15, 1921? 2. If so, was such equitable right subsequently revoked by the parties? And 3. If such equitable right was so created and not subsequently revoked, was it effective beyond the expiration of the September 15, 1921, ten-year license contract, that is, did it continue in force under the license agreement of June 1, 1931, between Delaware and the defendant.

The defendant contends that no such equitable right was created because the parties did not so intend and because the authorization contained in the letter of May 15, 1922, was revocable.

The rules of law applicable to these contentions and necessary in testing the facts have been set out and discussed by this court in State Central Sav. Bank v. Hemmy, 8 Cir., 77 F.2d 458; Tobin v. Insurance Agency Co., 8 Cir., 80 F.2d 241; and Theatre Realty Co. v. Aronberg-Fried Co., Inc., 8 Cir., 85 F.2d 383. So far as pertinent these rules are as follows:

■ A mere promise by a debtor to pay his debt out of a specified fund belonging to him or coming to him is not an equitable assignment of such fund. For that purpose there must be a distinct appropriation of the fund which must amount to a transfer of title and the establishment of a right in rem.

■ No particular form or language is necessary to create an equitable assignment provided there is shown an intention to appropriate on the one hand and to receive on the other.

■ A lien is distinguished from an assignment in that it is a charge upon property, while an assignment creates an interest in property.

■ If the intention of the parties to make an equitable assignment or to create an equitable lien arises by necessary implication from the terms of the agreement, construed with reference to the situation of the parties at the time of the contract, and by the attendant circumstances, such equitable right will be enforced by a court of equity against the fund.

■ The conduct of the parties should be construed as adopting whatever method consistent with the facts and with the rights reserved is most fitted to accomplish the result intended.

■ The assent of the holder of a fund belonging to another is not essential to the establishment of a lien or an assignment by the owner.

■ An equitable right will be enforced against third parties who have notice of it.

■ We think that when the plaintiff accepted Illinois' proposal of April 29, 1922, a contract was consummated appropriating a portion of the royalties accruing to the corporation to the payment of the royalties accruing to Mrs. Springer under the contract of February 28, 1918. The language was suitable to warrant that understanding on the part of Mrs. Springer. The proposal read in part: "The Rid Jid Products Company * * * will authorize in writing the J. R. Clark Company * * * to pay to Mrs. Springer 24¢ for every dozen boards sold from April 1, 1922, and thereafter." The word "thereafter" could only be construed in connection with the obligation of the contract of February 28, 1918, saying the royalties due Mrs. Springer "shall be paid during the life or lives of each and every patent * * * to be issued or heretofore issued * * * and assigned * * * to said party of the first part." Further, the proposal and its acceptance were made in connection with a suit between the parties then pending in the state court. This contract contained no provision for revocation or modification whatever.

The notice or letter of May 15, 1922, to the defendant, given pursuant to the contract was equally unqualified. It provided for the payment of the royalties due Mrs. Springer "on each and every * * * ironing board sold by your Company, which sum shall be deducted from the amount of royalty due our Company under its contract with you." There was no reservation of a right to revoke or modify this authorization.

■ The defendant argues that the parties did not intend that the agreement to appropriate a portion of the royalties due the Illinois corporation from the defendant to the payment of royalties due Mrs. Springer should be irrevocable, and that this is shown by the words "This cancels all previous instructions to you covering payment and distribution of royalties" in the letter of March 1, 1924, from the Illinois corporation to the defendant, and the provision in paragraph 9 of the contract of June 1, 1931, between Delaware and the defendant for the continued payment of royalties to Mrs. Springer, ending in the words, "Clark Company is hereby authorized to make such payments, under the present contract, until otherwise instructed by Rid Jid Products."

Of this contention it may be said, first, that when this letter was written and this contract executed Mrs. Springer, the record shows, lived in the state of Oregon, while the parties to the correspondence and the contract were in Minnesota or Illinois. There is no showing that Mrs. Springer knew anything about these statements or that she acquiesced in them. The statements could not be binding upon her.

Also, it is said that these statements indicate the construction which the parties placed upon the contract after it had been entered into. There is a rule, of course, that where in the performance of an ambiguous contract the contracting parties place a construction upon its terms, the presumption is that such construction is a correct statement of their original intent. This rule can have no application here, however, because, as shown above, it does not appear that Mrs. Springer had any knowledge of such construction by the licensor. She was not a party to the letter of March 1, 1924, nor to the contract of June 1, 1931.

These ex parte instructions, given years after the letter of May 15, 1922, was written, do not even tend to prove intent at the time the original arrangement was made in the settlement of the suit for royalties. In view of the nature of the evidence relating to the subsequent statements and conduct of the parties, intent as of May 15, 1922, must be determined by the facts and circumstances then existing.

■ Apparently to show that certain intervening rights now bar the plaintiff's right to the royalties, it is argued that defendant, at the time of the events or occurrences which gave rise to the equitable assignment, did not know of the provision of the contract of February 28, 1918, reserving a royalty to the plaintiff until the end of the life of the patents. While a contrary inference might be drawn from the attendant circumstances alone, it is unneces-

sary to conjecture. On January 22, 1922, less than four months before the letter of May 15, 1922, was sent and received, the defendant had taken a mortgage from Illinois covering the patents, and specifically made subject "to a certain royalty agreement between Aaron R. Springer and Oregon Woodenware Manufacturing Company, dated February 28th, 1918, which shall likewise at all times hereafter remain in full force and effect." The mortgage was in defendant's possession for five years before it was released. This fact coupled with defendant's knowledge of the suit brought by the Springers against the Illinois corporation in April, 1922, and with knowledge of the settlement of that suit compel the conclusion that the defendant was familiar with the terms of the contract of February 28, 1918.

The facts clearly establish an equitable assignment, irrevocable without the consent of Mrs. Springer. Compare Tobin v. Insurance Agency Co., supra; Theatre Realty Co. v. Aronberg-Fried Co., supra, 85 F.2d at page 387; and 6 C.J.S. Assignments § 79. They show an intention by the parties to transfer an interest in a fund in existence and to come into existence under a valid contract. That being so, the particular language used to create an equitable assignment is immaterial, and the words "you have been authorized to pay" having been acted upon by the parties, were sufficient to create such an assignment. Metcalf v. Kincaid, 87 Iowa 443, 54 N.W. 867, 868, 869, 43 Am.St.Rep. 391, and cases cited. See, also, State Central Sav. Bank v. Hemmy, supra; Tobin v. Insurance Agency Co., supra; Los Angeles City School Dist. v. Tucker, 99 Cal.App. 390, 278 P. 507; and Laclede Bank v. Schuler, 120 U.S. 511, 516, 7 S.Ct. 644, 30 L.Ed. 704. There was an appropriation to the plaintiff of a portion of the royalties that were to accrue to Illinois from the defendant. There was no reservation by the assignor Illinois of a power to revoke or modify. The words "until otherwise instructed" in the license contract of June 1, 1931, were without significance for two reasons: (1) Neither Kleinsorge and his corporations nor the Clark Company could destroy the latter's equitable obligation without the consent of Mrs. Springer. Grier v. Baynes, C.C. N.Y., 46 F. 523, 525. See, also, 6 C.J.S. Assignments, § 79. (2) A direction in an order to pay "until further notice" does not affect the obligation where, as here, the order is accepted and payments are made thereunder, and no notice to stop payment has been given. Samstag v. Orr, 101 Ark. 582, 142 S.W. 1127, 1128.

But the defendant contends that if such an equitable right existed in Mrs. Springer it terminated when the ten-year license contract of September 15, 1921, between Illinois and the defendant expired. We do not agree with this legal conclusion. In this connection it will be remembered that Illinois was succeeded in 1930 by Delaware. On June 1, 1931, prior to the expiration of the ten-year license, Delaware and the defendant entered into a license contract, cancelling the 1921 contract but continuing the license to the end of the life of the patents and providing for the payment of royalties beyond that date. That contract provided in paragraph 9 for continuing payment of "part of the accruing royalties" to Mrs. Springer "until otherwise instructed", and no different instruction was ever given. Neither was the instruction revoked. Payments continued until November, 1934.

Another fact of importance is that Oregon was succeeded by Illinois and Illinois by Delaware. In each instance the patents were assigned to the successor and the liabilities of the predecessor were assumed. In each change of corporate name Kleinsorge continued to own the capital stock and to hold the office of president. As president and owner of Delaware he knew all the transactions of his corporation with the Springers and with the defendant. He was familiar, and, therefore, Delaware was familiar, with the royalty contract of February 28, 1918, between Oregon and the Springers. The defendant continuing as licensee under its contract of June 1, 1931, had complete knowledge of the facts regarding the February 28, 1918, contract, which it learned during the operation of the 1921 ten-year license.

Under these circumstances the defendant "is compellable" to pay the royalty reserved to Mrs. Springer. The compelling obligation results from the letter of May 15, 1922, the contract of June 1, 1931, and the circumstances attending these transactions. "An order to pay out of a specified fund has always been held to be a valid assignment in equity", and "the fund-holder is bound from the time of no-

tice." Christmas v. Russell, 81 U.S. 69, 84, 14 Wall. 69, 84, 20 L.Ed. 762.

The facts, also, include all the elements of an equitable lien, which "is simply a right of a special nature over the thing, which constitutes a charge or incumbrance upon the thing, so that the very thing itself may be proceeded against in an equitable action." 3 Pomeroy, Eq.Jur. (4th Ed.) § 1233. In Sexton v. Kessler & Co., 225 U. S. 90, 98, 99, 32 S.Ct. 657, 659, 56 L.Ed. 995, Mr. Justice Holmes, speaking for the court, said: "While the phrase 'equitable lien' may not carry the reasoning further or do much more than express the opinion of the court that the facts give a priority to the party said to have it, we are of opinion that the agreement created such a lien at least, or in other words, that there is no rule of local or general law that takes from the transaction the effect it was intended to produce." The effect of the transactions here reviewed was clearly to give to the plaintiff a claim against or a charge upon the royalties accruing from the defendant to its licensor to the extent of the royalty reserved in the contract between Oregon and Springer.

For the foregoing reasons the judgment appealed from is reversed, and the case remanded, with instructions to proceed in conformity with this opinion.