420 F.Supp. 795 (1976)
CITIZENS & SOUTHERN NATIONAL BANK, Plaintiff,
v.
Bill L. BRUCE and Donald R. Ham d/b/a Bruce Properties Company, Defendants.
No. 75-645C(4).
United States District Court, E. D. Missouri, E. D.
September 21, 1976.
*796 Richard C. Freeman, III, Atlanta, Ga., and Robert F. Summers, Clayton, Mo., for plaintiff.
Thomas K. Edelmann, Love & Lacks, Clayton, Mo., Thomas J. Lewis, Jr., Atlanta, Ga., for defendants.

MEMORANDUM
NANGLE, District Judge.
In this action, plaintiff Citizens and Southern National Bank seeks to recover proceeds allegedly owing on accounts assigned to plaintiff by a third party with whom defendants did business.
Having tried the case sitting without a jury the Court makes the following findings of fact and conclusions of law:

FINDINGS OF FACT
1. Plaintiff Citizens and Southern National Bank is a corporation organized and existing under Georgia law, with its principal offices in Atlanta, Georgia. Defendants Bill L. Bruce and Donald R. Ham were engaged in business as a partnership operating under the fictitious name of Bruce Properties Company [hereinafter "defendant"].
2. Contract Specialists, Inc., a Georgia corporation, and defendant entered into two agreements in 1973 concerning services to be performed by Contract Specialists. The agreements were negotiated in Missouri. Final approval occurred in Georgia. Under the terms of the agreements, Contract Specialists was to act as agent for defendant in obtaining tenants for apartment complexes in St. Louis. Contract Specialists was to receive a fee equal to the first month's rent on the apartments rented. The agreements provided in part that:
All billing to be in OWNERS office by the 28th of each month and payment to be made no later than the 10th of the following month.
*797 3. Because defendant became slow in paying the invoices when due, and because Contract Specialists was in need of cash, Contract Specialists entered into an agreement with plaintiff whereby Contract Specialists would present a copy of the invoices it sent to defendant to plaintiff who would pay Contract Specialists the amounts of the invoices less a 3% discount. Plaintiff would bill defendant for the full amounts of the invoices by forwarding to them a monthly statement. Defendant therefore received an original invoice from Contract Specialists and a monthly statement from plaintiff.
4. Various invoices prepared by Contract Specialists were presented to the Court. On the copies of the invoices given by Contract Specialists to plaintiff, there appeared the following stamp:
NOTICE
THIS ACCOUNT HAS BEEN ASSIGNED TO, IS OWNED BY, AND IS PAYABLE IN PAR FUNDS ONLY TO:
 THE CITIZENS & SOUTHERN
 NATIONAL BANK
 P.O. BOX 4614 ATLANTA,
 GEORGIA 30302
TO WHOM NOTICE MUST BE GIVEN OF ANY MERCHANDISE RETURNS OR CLAIMS FOR SHORTAGE, NON-DELIVERY OR FOR OTHER GROUNDS.
On the original invoices, however, which had been sent by Contract Specialists directly to defendant, no such stamp appeared.
5. Plaintiff has presented to the Court the monthly billing statements which it sent directly to defendant. At the top of the statement is the following:

CHARGE ACCOUNT SERVICE

COMMERCIAL DIVISION

A RECEIVABLES BILLING PROGRAM FOR BUSINESS

TERMS: NET 10 E.O.M.
To one side of the statement appeared an address which read:

CHARGE ACCOUNT SERVICE

COMMERCIAL DIVISION

P.O. BOX 4614

ATLANTA, GEORGIA 30302
In the middle of the statement was a logo, "C&S". There is no indication anywhere that plaintiff was the assignee of the accounts. The statements did not even indicate that payment should be made to plaintiff. These statements could easily be construed to have been sent by a billing service.
6. Shortly after Contract Specialists entered into this agreement with plaintiff, some of plaintiff's personnel would telephone defendant's controller, John G. Ebest, to find out when payment could be expected. During one conversation, plaintiff's employee and Ebest determined that a credit was due defendant for approximately $1,400.00. At no time during these telephone conversations did plaintiff's personnel indicate to Ebest that they were assignees under the invoices. Ebest testified that he had received telephone calls from other banks asking when their customers could expect payments. Accordingly, Ebest did not think that plaintiff had any interest in the accounts themselves.
7. Plaintiff never issued any writing to defendant advising it of the assignment.
8. On May 28, 1974, one of plaintiff's employees made a trip to St. Louis and hand-delivered a letter indicating that plaintiff no longer factored receivables for Contract Specialists. Attached to the letter were invoices which plaintiff claimed to own and further claimed to be due and owing. The Court finds that, prior to this date, defendant had no notice of the assignment.
9. By agreement of the parties prior to trial, plaintiff's claim was reduced to $13,555.00 plus interest since May 31, 1974. Defendant contends that it is entitled to credits in the amount of $9,007.50 for payments *798 made to Contract Specialists on April 22, May 7, May 14 and May 20, of 1974, prior to receiving notice of the assignment. These checks do not indicate what these payments were for, and Ebest testified that he was unable to provide that information. Contract Specialists did business with defendant for projects other than the ones involved herein and it is equally possible that these checks were payment for other accounts.
10. Defendant has claimed additional credits in the amount of $1,217.50 for incorrect charges in invoices. Defendant presented a chart listing the names of various tenants and the amount of credit claimed for each. The Court has expended considerable time reviewing this claim. The Court is unable to determine how defendant arrived at the amount of credit claimed. The amounts in the chart presented do not tally with the amount claimed. The evidence presented at trial failed to elucidate this matter for the Court. As the parties were advised at trial, this Court is not willing to sift through sixteen invoices cross-checking names and amounts in search of error. This is a job for counsel herein and counsel has failed to present sufficient support for these credits.

CONCLUSIONS OF LAW
This Court has jurisdiction over the subject matter and the parties to the suit. 28 U.S.C. § 1332.
The Court concludes that Missouri law governs. The contract which forms the basis of this suit was negotiated in the state of Missouri and was to be performed in this state. In Kennedy v. Dixon, 439 S.W.2d 173 (Mo.banc 1969), the Missouri court adopted the position taken in the Restatement Second, Conflicts of Laws, which provides that the law of the state having the most significant relationship to the claim in dispute should govern. With specific reference to contracts, the Restatement provides that:
The validity of a contract for the rendition of services and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the local law of the state where the contract requires that the services, or a major portion of the services, be rendered . . .. Id. at § 196.
See also, § 188(3).
Plaintiff has attempted to argue that Contract Specialists was acting as defendant's agent when it entered into the factoring agreement with plaintiff, and that therefore, defendant had knowledge of the assignment. The agreement between Contract Specialists and plaintiff related to Contract Specialist's attempts to recover compensation owed to it by defendant, its principal. From the circumstances surrounding the factoring arrangement, it is clear to the Court that Contract Specialists was not acting as defendant's agent in entering into the agreement with plaintiff, nor did plaintiff consider that to be the case.
Defendant argues that the work done by Contract Specialists generated only one cause of action and that a portion of the invoices issued as a result of this work could not be assigned to plaintiff without defendant's consent. Defendant is correct in asserting that a partial assignment of a claim requires the debtor's consent. Howard Undertaking Co. v. Fidelity Life Ass'n, 59 S.W.2d 746 (Mo.App.1933); 6 Am.Jur.2d Assignments § 100. The Court, however is unable to conclude that the work done constituted but one cause of action. The contract specified that payments were to be made monthly. Defendant received monthly bills for the services performed. Under these circumstances, the Court concludes that the claims were separate and that the assignment without defendant's consent was proper. Cf., Joseph T. Ryerson & Son v. Stark-Inland Mach. Works, 270 S.W. 715 (Mo.App.1925); Fidelity & Deposit Co. of Maryland v. Brown, 228 Mo.App. 164, 65 S.W.2d 1064 (1933).
Defendant also argues that plaintiff is estopped to deny the right of defendant to pay Contract Specialists directly because plaintiff had acquiesced in such payments *799 by accepting certain checks which were made payable to Contract Specialists. In light of the Court's holding, this point becomes irrelevant.
The Court has found that defendant had no notice of the assignment of the accounts by Contract Specialists to plaintiff prior to May 28, 1974. Accordingly, defendant would not be liable to plaintiff for any payments made to Contract Specialists. Laclede Bank v. Schuler, 120 U.S. 511, 7 S.Ct. 644, 30 L.Ed. 704 (1887). An assignee, however, stands in the stead of his assignor, Sander v. Mid-Continent Insurance Co., 514 S.W.2d 634 (Mo.App.1974), and accordingly, is entitled to those rights afforded to the original creditor. The fact that defendant had no notice of the assignment does not relieve defendant of the obligation to pay; it simply relieves defendant of liability for payments made to the assignor. The Court must conclude that defendant has failed to establish payments to the assignor, Contract Specialists. The Court found that the $9,007.50 worth of checks did not indicate what they were intended to pay, and that the witnesses were unable to clarify the issue. The Court further found that defendant did business with Contract Specialists, for which payments would be made, which was unrelated to the business involved herein. Under these circumstances, the Court is unable to conclude that the $9,007.50 was payment for moneys owing under the invoices which are the subject of this suit.
For similar reasons, the Court can not conclude that defendant is entitled to a credit in the amount of $1,217.50 for incorrect charges in the invoices. The Court has found insufficient support in the record to establish this claim of credit.
Judgment will be entered for plaintiff in the amount of $13,555.00 plus 6% interest since May 31, 1974. § 408.020, RSMo (1969).