GEORGE CAMBERN AND ANOTHER, d.b.a.
CAMBERN BROTHERS, v. JOHN HUBBLING.

238 N. W. 2d 622.

January 30, 1976—No. 45368.

*Vander Kooi & Sandvik* and *Benjamin Vander Kooi,* for appellant.

*Scott Law Office* and *William P. Scott,* for respondents.

PER CURIAM.

Plaintiffs brought this action for damages arising out of the breach of the implied warranty of fitness of calves purchased from defendant. The jury awarded plaintiffs $19,386.62. Defendant appeals from the district court's order denying his alternative motion for judgment notwithstanding the verdict or a new trial.

Plaintiffs are brothers and farmers engaged in raising cattle and calves. Defendant, a farmer and cattle raiser, is also in the business of buying Holstein heifer calves for resale. In August 1973, plaintiffs arranged to purchase some calves from defendant.

On August 20, 1973, defendant delivered to plaintiffs' farm 179 calves at a purchase price of $214 a head. Shortly after delivery, the calves began to show signs of distress. Between August 22 and November 21, 1973, 81 calves died. The balance of the herd was sold at three separate auctions for approximately $143 a head.

A necropsy was performed by a local veterinarian on September 6, 1973. Two other necropsies were performed by the Animal Disease Research Diagnostic Laboratory at South Dakota State University. Both examinations disclosed that the calves died of bronchopneumonia. The examining doctors each testified that the calves had been infected with chronic bronchopneumonia on August 20, 1973, when delivered to plaintiffs' farm.

Defendant raises two issues on appeal. First, he argues that the district court erred in excluding from the jury's consideration the written receipt for the cattle signed by Floyd Cambern

at the time the cattle were delivered. Second, defendant contends that the district court did not correctly instruct the jury as to the measurement of damages for breach of warranty.

1. The receipt for the cattle contained the following clause immediately above Floyd Cambern's signature:

"IMPORTANT—The undersigned hereby acknowledges receipt of cattle purchased from Quality Dairy Cattle, Hardwick, Minnesota to be in good condition and further agrees that as far as health, shipping fever or death of any cattle which may hereafter occur that Quality Dairy Cattle will in no way be held liable for any loss. The purchaser of livestock listed above agrees that the title of said livestock shall be retained by Quality Dairy Cattle until check or draft is paid."

Plaintiffs moved to exclude this clause. Although their motion was argued principally under Minn. St. 336.2—302,[1] plaintiffs also put into issue the question of whether the receipt and exculpatory clause was part of the contract of sale.[2] In support of their motion, plaintiffs made the following offer of proof:

"* * * [W]hen this receipt was presented to him by the defendant for his signature, only a few seconds elapsed, that he signed the same on the hood or fender of the truck used to haul the last load of calves, that he did not read these words, that

---

[1] Minn. St. 336.2—302(1) provides as follows: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

[2] Plaintiffs' motion directed the court's attention to 1 Anderson, Uniform Commercial Code (2 ed.) § 2—316:26, p. 695, which provides in part as follows: "A limitation of warranties to be effective must have been bargained for so that a limitation stated in printed matter given by the seller to the buyer after the sale was completed is not binding * * *. Likewise, when no disclaimer is made as part of the oral sales contract, the buyer is not bound by a disclaimer which is a clause of the printed warranty which is shipped or delivered to him with the goods."

these words were not conspicuous, that defendant did not read these words to him, nor did the defendant tell him to read the words himself before he signed that receipt."

Defendant did not contest this offer of proof.

The district court initially excluded the disclaimer clause from evidence on the ground that it was unconscionable, but by memorandum accompanying its order denying defendant's post-trial motions the court added as a reason that there had been no agreement between the parties to include the clause in their contract for sale. We hold that the latter, rather than the former, is the more sound reason for its exclusion. If the trial court's rule is correct, it is not to be reversed solely because its stated reason was not correct. Schoeb v. Cowles, 279 Minn. 331, 156 N. W. 2d 895 (1968); McNab v. Jeppesen, 258 Minn. 15, 102 N. W. 2d 709 (1960).

The testimony of the parties fully supports the conclusion that an oral contract for sale, without disclaimer of warranty, was made prior to the delivery of the calves. Although parties may expressly modify a contract without a new consideration, it must be established that such an agreement was in fact made.[3] From plaintiffs' offer of proof, it is evident that there was no assent by plaintiffs to a subsequent modification of the contract for sale. The district court's ruling is accordingly affirmed.

2. The basic scheme for damages for breach of warranty is

---

■Minn. St. 336.2—209(1) provides: "An agreement modifying a contract within this article needs no consideration to be binding." The Minnesota Code Comment to this section notes that this is a change from precode law and continues as follows (21A M.S.A. p. 211): "The premise underlying the 'no consideration' provision in this subsection is that there is still a bargain agreement despite the modification, and that even if the changes are all on one side they should be upheld so long as both parties have assented in good faith since such assent will not normally be given without some valid reason such as change in circumstances or needs and should not be frustrated by technical applications of the requirements of consideration."

set out in Minn. St. 336.2—714 and 336.2—715. Minn. St. 336.2—714 provides as follows:

"(1) Where the buyer has accepted goods and given notification (subsection (3) of section 336.2—607) he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

"(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

"(3) In a proper case any incidental and consequential damages under the next section may also be recovered."

Minn. St. 336.2—715 provides as follows:

"(1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

"(2) Consequential damages resulting from the seller's breach include

"(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

"(b) injury to person or property proximately resulting from any breach of warranty."

It is defendant's position that Minn. St. 336.2—714(2) is the exclusive measure of damages in the situation presented by this action and that failure to so instruct was reversible error.

We disagree. While subsection (2) states the time-honored formula of damages for breach of warranty, neither the framers

of the Uniform Commercial Code [4] nor the authors of the Minnesota Code Comments [5] intended that it be exclusive.

The district court explained its decision to give a general damage instruction as follows:

"* * * Where the subject matter of the sale is a sick animal it is much more reasonable to measure damages by the expense and result of proper treatment and to calculate the effect of either failure or success, or both, than to base damages on what must be a highly speculative evaluation at the time of sale when the degree of response to treatment is necessarily an unknown factor."

We find no error in the district court's instruction.

Affirmed.

---

[4] The Uniform Commercial Code Comment provides in part: "Subsection (2) describes the usual, standard and reasonable method of ascertaining damages in the case of breach of warranty but it is not intended as an exclusive measure." 21A M.S.A. p. 705.

[5] The Minnesota Code Comment states that subsection (1) is applicable "where special circumstances show proximate damages of a *different* amount than those called for by subsection 2—714(2)." 21A M.S.A. p. 703.