[Civ. No. 43851. First Dist., Div. Three. May 22, 1979.]

GOLD COAST LEASING COMPANY, Plaintiff and Respondent, v. CALIFORNIA CARROTS, INC., Defendant and Appellant.

COUNSEL

Lacey, Shellooe & Meyenberg and Jeffrey A. Dennis-Strathmeyer for Defendant and Appellant.

Carnazzo, Herendeen & Bryan and MacDonald Bryan for Plaintiff and Respondent.

OPINION

SCOTT, J.—Respondent Gold Coast Leasing Company (Gold Coast) obtained a judgment of $3,161.78 against California Carrots, Inc. (Carrots). In July of 1970, Gold Coast, engaged in the vehicle leasing business, was leasing trucks to Salinas Truck Transport, Inc. (STT). Carrots was STT's principal customer. STT assigned to Gold Coast all money due or to become due under its hauling contracts with Carrots.

Carrots was notified of the assignment. A financing statement setting forth the facts of the assignment was filed with the Secretary of State in January 1973, as required by the California Commercial Code section 9402 to perfect a security interest.

In early 1974, the Internal Revenue Service (IRS) filed federal tax liens on the property of STT with the Secretary of State. From May 1, 1974, to August 23, 1974, Carrots made payments directly to STT on its invoices rather than to Gold Coast under the assignment. On August 23 Gold Coast notified Carrots that all further payments due STT from Carrots were to be made directly to Gold Coast. On August 30 the IRS served Carrots with a levy on all property or property rights of STT in possession of Carrots. Carrots paid the IRS $3,161.78, which amount had been invoiced to Carrots by STT on August 7, 1974.

The trial court concluded that Carrots violated Gold Coast's rights as assignee of STT's accounts receivable by paying the $3,161.78 to the IRS, and awarded Gold Coast that amount in damages. ■ We reverse, as the federal tax liens had priority over any rights of Gold Coast to the money owed to STT by Carrots. Because of this priority, the payment to the IRS pursuant to levy attachment was a complete defense, which discharged Carrots from any further obligation to Gold Coast or to STT.

The federal government's tax lien authority is detailed in the Federal Tax Lien Act (26 U.S.C. § 6321 et seq.). Section 6321 grants lien rights to the federal government "upon all property and rights to property" of delinquent taxpayers. ■ The threshold question in all cases where the federal government asserts a tax lien is whether and to what extent the taxpayer had "property" or "rights to property" to which the tax lien could attach. While federal law determines the priority of competing interests in property where one of them is a federal tax lien, state law must first answer that initial question. (*Business Title Corp.* v. *Division of Labor Law Enforcement* (1976) 17 Cal.3d 878, 884 [132 Cal.Rptr. 454, 553 P.2d 614].)

Preliminarily, we note that Gold Coast incorrectly asserts that consideration of the priority of a federal tax lien is irrelevant, as under the law of assignments when STT assigned its property interest to another, it no longer had any property upon which a tax lien could attach. ■ A contention similar to respondent's was rejected in *Nevada R. & S. Co.* v. *United States Dept. of Treasury I.R.S.* (D.Nev. 1974) 376 F.Supp. 161,

wherein the court concluded that the question of whether a taxpayer who has sold or assigned accounts receivable or contract rights retains sufficient interest in that property for a federal lien to attach must be answered by reference to the state's Uniform Commercial Code rather than its law of assignments. (See also *United States* v. *Trigg* (8th Cir. 1972) 465 F.2d 1264.)

If the underlying transaction was a security interest according to the California version of the Uniform Commercial Code, it is that law and not the law of assignments which must be applied to the underlying transaction here. If the agreement between Gold Coast and STT was a security interest in accounts receivable, we must then consider the priority of that security interest as against the federal tax lien.

Division 9 of the California Commercial Code,[1] known as the "Uniform Commercial Code—Secured Transactions," includes within its scope "any transaction (regardless of its form) which is intended to create a security interest in personal property including . . . accounts" (§ 9102, subd. (a)); and also includes "any sale of accounts" (§ 9102, subd. (b)). The California code comment to the section indicates that the test of the applicability of division 9 is whether the parties intended the transaction to have effect as security, but that the sale of an account is subject to division 9 regardless of the parties' intent.

Commercial Code section 1201, subdivision 37 defines security interest as an "interest in personal property or fixtures which secures payment or performance of an obligation . . . The term also includes any interest of a buyer of accounts, chattel paper, or contract rights which is subject to Division 9." The California code comment to subdivision 37 states, "This definition is broad enough to include the traditional California security devices . . . assignments of accounts receivable . . ."

Commercial Code section 9106 defines account as any right to payment for goods sold or leased or for services rendered; section 9104 excludes from division 9 any assignment of accounts which is for the purpose of collection only.

■ STT assigned to Gold Coast its right to payment from Carrots for services rendered; that right to payment is an account as defined by

---

[1]In effect at the time of the transactions here. Division 9 was amended effective January 1, 1976.

section 9106. At the time of the assignment, STT was having financial difficulties, and payments were due and owing to Gold Coast on its lease contracts with STT. According to the testimony of the vice president and general manager of Gold Coast, the purpose of the assignment was "to enable us [Gold Coast] to continue to operate with Salinas Truck Transport . . . in order to extend the period of terms on the leases, which we had to do because they were so far behind. I agreed to do it . . . if I could get an assignment from California Carrots." There was also testimony to the effect that Gold Coast was concerned with securing to the extent it could the lease payments due it. In addition, there was testimony that when Carrots did pay the money owed STT directly to Gold Coast, Gold Coast would write a check to STT for the difference between the amount STT owed Gold Coast and the amount actually received from Carrots. From the above it is apparent that STT and Gold Coast intended the assignment agreement as security for STT's obligation to pay Gold Coast under its truck leases, and that the assignment was unquestionably not for the purpose of collection only.

We therefore conclude that the agreement between Gold Coast and STT was a security agreement. The filing of the financing statement as required by section 9402 reinforces our conclusion that the parties intended the transaction to create a security interest flowing to Gold Coast.

■ The question then remaining is whether the interest of the secured party, Gold Coast, had priority over the interest of the federal government in STT's accounts receivable. That question must be answered by reference to federal law. (*Business Title Corp.* v. *Division of Labor Law Enforcement, supra,* 17 Cal.3d at p. 884; *Texas Oil & Gas Corporation* v. *United States* (5th Cir. 1972) 466 F.2d 1040, cert. den., 410 U.S. 929 [35 L.Ed.2d 591, 93 S.Ct. 1367].)

The United States Code, title 26, section 6323 treats generally the priority of a federal tax lien. Section 6323(a) provides that a federal tax lien is not valid against any holder of a security interest until notice of the federal tax lien has been filed. To have priority over a federal tax lien pursuant to section 6323(a), a security interest must "exist" as defined by section 6323(h) prior to the tax lien filing.[2] When an agreement creates a

---

[2]Title 26, section 6323(h) of the United States Code provides: "(1) Security interest.—The term 'security interest' means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against

security interest in after acquired property, that security does not "exist" for purposes of section 6323(a) until the collateral is acquired by the debtor or until the debtor has rights in the collateral. (*Donald* v. *Madison Industries, Inc.* (10th Cir. 1973) 483 F.2d 837, 843.)

The agreement between Gold Coast and STT creating the security interest in STT's accounts receivable from Carrots was entered into in 1970, and filed in 1973. However, the particular collateral at issue here was money which only became due and payable to STT from Carrots after services rendered in August of 1974; STT had no rights in that collateral until the services were rendered. Therefore, when the tax liens were filed in January and February of 1974, the security interest in that collateral had not yet "come into existence" according to section 6323(h) and was not entitled to priority pursuant to section 6323(a).

A security interest which did not "come into existence" until after the filing of a federal tax lien may nonetheless have priority against that tax lien pursuant to section 6323(c) if the security interest was created by a written agreement entered into before the tax lien filing, and if it constitutes a "commercial transactions financing agreement" as defined by section 6323(c)(2)(A). However, section 6323(c)(2)(B) limits the property which may qualify as the subject of a commercial transactions financing agreement to "only commercial financing security acquired by the taxpayer *before the 46th day after the date of tax lien filing.*" (Italics added.) As has been discussed, STT did not acquire the collateral at issue here, the accounts receivable from Carrots, until August of 1974 when it rendered services to Carrots. As the tax liens were filed in January and February of 1974, the collateral was not acquired for purposes of the federal tax lien statutes within the requisite 45-day period, and the security interest was not entitled to priority according to section 6323(c). (See *Texas Oil & Gas Corporation* v. *United States, supra,* 466 F.2d at pp. 1051-1052.)

We thus conclude that the federal tax liens had priority over the security interest of Gold Coast.

■    One who surrenders the property of a taxpayer pursuant to a federal tax lien is discharged from any obligation to the taxpayer. (26

loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth."

U.S.C. § 6323(d).) It follows that such an individual must also be discharged from liability to the holder of a security interest in the property of a taxpayer, when that security interest is subordinate to the federal tax lien according to federal law. ▮ We conclude that Carrots properly paid the lien pursuant to the IRS levy, and that the trial court erred in awarding Gold Coast judgment in the amount of $3,161.78.

Carrots also seeks restitution of the amount paid to Gold Coast under a writ of execution. Pursuant to the provisions of Code of Civil Procedure section 908, relief to appellant is appropriate.

Judgment is reversed and the cause remanded with directions for the entry of judgment on behalf of California Carrots, Inc., with further directions that the trial court enter judgment for restitution in accordance with the provisions of Code of Civil Procedure section 908.

White, P. J., and Halvonik, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 19, 1979.