**GUARANTY STATE BANK OF ST. PAUL, Respondent,**

v.

**Dwight R. J. LINDQUIST, Trustee in Bankruptcy of Total Maintenance Co., Defendant,**

**County of Hennepin, etc., Respondent,**

**United States of America, Appellant,**

**Gloria Strand, individually and d.b.a. G & T Maintenance, Respondent.**

No. 50384.

Supreme Court of Minnesota.

Dec. 19, 1980.

Rehearing Denied April 22, 1981.

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Karl Schmeidler and Gayle P. Miller, Attys. Tax Division, Dept. of Justice, Washington, D. C., for appellant; Thomas K. Berg, U. S. Atty., Minneapolis, of counsel.

Levitt, Palmer, Bowen, Rotman & Share, John Troyer and Matthew L. Levitt, Minneapolis, for Guaranty State Bank of St. Paul.

Thomas Johnson, County Atty. and David E. Mikkelson, Asst. County Atty., Minneapolis, James T. Tuzinski, Minneapolis, for respondent.

Heard before OTIS, PETERSON, and SCOTT, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

Plaintiff Guaranty State Bank of Saint Paul brought this action for a judgment declaring that its interest in a fund of $14,-395.35 is prior and superior to the interests, if any, of defendants Dwight R. J. Lindquist, trustee in bankruptcy of Total Maintenance Co.; the County of Hennepin (the county); the United States of America (the United States); and Gloria Strand, individually and d. b. a. G & T Maintenance, Inc. The trial court awarded $12,034.80 of the fund to plaintiff and the balance, $2,360.55, to the United States. The United States now appeals from the trial court's order denying its alternative motion for amended findings of fact, conclusions of law, and order for judgment or a new trial.[1] We reverse.

The fund in controversy is in the possession of the county. It consists of money the county owes Total Maintenance Company (TMC), a Minnesota corporation that performed janitorial services under contracts with the county and now is bankrupt. Plaintiff and the United States both claim the fund. Plaintiff's claim to the fund is based upon the allegation that TMC owes plaintiff $15,534.80, the unpaid balance of a loan from plaintiff to TMC, plus interest and attorneys fees. The United States claims it is entitled to the fund because TMC owes it $28,194.97 in overdue federal withholding and social security taxes.

On March 22, 1974, TMC made to plaintiff a demand promissory note in the principal amount of $15,000 with interest at the rate of 12.5% per year.[2] On April 8, 1974, TMC, in order to secure the payment of that note "and also any and all other indebtedness and obligations of [TMC] to [plaintiff] * * * now existing or hereafter arising," granted plaintiff a security interest in, *inter alia*, "accounts receivable * * * now owned and hereafter acquired" by TMC. A financing statement evidencing plaintiff's security interest was filed with the Minnesota Secretary of State on April 29, 1974.

TMC established with plaintiff a "collateral account" in which all payments on accounts receivable made to TMC would be deposited. By a letter dated April 8, 1974, plaintiff and TMC advised the county that TMC had assigned its accounts receivable to plaintiff "pursuant to a Security Agreement" between TMC and plaintiff. The letter directed the county to make all future payments on its contracts with TMC to plaintiff. The county accordingly named plaintiff as payee on the checks it issued monthly in payment for janitorial services performed by TMC. Plaintiff deposited the proceeds of these checks in TMC's collateral

---

1. The remaining defendants have not appealed. Defendant county is merely a stakeholder in the action. The trial court held defendant Dwight R. J. Lindquist, the trustee in bankruptcy, entitled to no part of the fund. Defendant Gloria Strand, d. b. a. G & T Maintenance, Inc., claimed a part of the fund representing payment for janitorial services rendered the county by G & T Maintenance between December 1, 1975, and January 16, 1976. The trial court found that G & T Maintenance was the alter ego of TMC, and that TMC's assignment of its contracts to G & T Maintenance, made without notice to the county, was ineffective. The trial court accordingly held Gloria Strand entitled to none of the fund.

2. The note renewed a note in the principal amount of $25,000 that TMC had previously made to plaintiff. The proceeds of the loan for which the notes were made were used as working capital.

account. From time to time funds were transferred from that account to TMC's checking account for TMC's use in conducting its business.

On August 15 and 19, 1974, and on December 8, 1975, the Internal Revenue Service (IRS) filed with the secretary of state notices of tax liens on TMC's property for a total of $28,194.97 in federal withholding and social security taxes owed by TMC. On December 2, 1975, the IRS served the county with a levy on all property of TMC in the county's possession. As a result of the levy the county has refused to pay plaintiff $14,395.35 the county admits it owes for janitorial services performed by TMC.

On January 16, 1976, the county terminated its contracts with TMC because TMC was failing to perform the work required. TMC filed bankruptcy on January 28, 1976. In July 1976 plaintiff commenced this action.

The trial court determined that plaintiff's interest in the fund is prior and superior to the interest of the United States, and that the interest of the United States is prior and superior to the interests of the remaining defendants. The trial court held plaintiff entitled to recover from the county the sum of $12,034.80, representing the principal balance of the note and the interest due thereon. It held the United States entitled to recover from the county the sum of $2,350.55, the remainder of the fund.

1. On appeal the United States challenges the trial court's determination that the United States' interest in the fund held by the county is subordinate to plaintiff's interest. Two questions are presented for our decision: (1) whether TMC possessed an interest in the fund to which the federal tax lien could attach, and (2) if so, whether the federal tax lien has priority over plaintiff's claim to the fund.

I.R.C. § 6321 provides that "if any person liable to pay any tax neglects or refuses to pay the same after demand, the amount * * * shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." The United States claims that it has a tax lien on the fund pursuant to § 6321 and that under § 6323 the tax lien has priority over any security interest of plaintiff.

The trial court concluded that TMC had in April 1974 assigned to plaintiff all its interest in its presently–owned and thereafter–acquired accounts receivable. From this the trial court further concluded that the fund, which is comprised of the proceeds of particular accounts receivable, does not constitute property of TMC to which a federal tax lien arising in August 1974 could attach under § 6321. Therefore, the trial court found § 6323 inapplicable and held the interest of the United States subordinate to the interest of plaintiff.

The trial court's conclusion is incorrect. In our view, TMC's directing the county to make to plaintiff all future payments on the county's contracts with TMC did not constitute an assignment. Therefore, I.R.C. § 6323 is applicable to this case.

 State law governs the question whether a taxpayer has "property" or "rights to property" to which a federal tax lien can attach. *Aquilino v. United States*, 363 U.S. 509, 512–13, 80 S.Ct. 1277, 1279–80, 4 L.Ed.2d 1365 (1960). The common law of assignment must be consulted to determine whether the transaction at issue here was an assignment divesting TMC of all interest in the accounts receivable.[3]

 Although under Minnesota law "no particular form of words is required"

3. Because the letter from plaintiff and TMC to the county makes it clear that TMC had given plaintiff a security interest in the accounts receivable, Article 9 of Minnesota's version of the Uniform Commercial Code (UCC) is applicable. Minn.Stat. §§ 336.9–102, 336.9–106 (1978). The UCC does not, however, define assignment; it "is not a comprehensive codification of commercial law." White and Summers,

Uniform Commercial Code 6 (1980); *see* § 336.-1–103. Despite Minnesota's adoption of the UCC, the common law of assignment remains effective in the state. *Cf. Willow City Farmers Elevator v. Vogel, Vogel, Brantner & Kelly*, 268 N.W.2d 762, 766–67 (N.D.1978) (North Dakota common law of assignment effective after adoption of UCC).

for an assignment, "an intent to transfer must be manifested and the assignor must not retain any control over the fund or any power of revocation." *Springer v. J. R. Clark Co.*, 46 F.Supp. 54, 58 (D.Minn.1942), *rev'd* on other grounds, 138 F.2d 722 (8th Cir. 1943). *See Miller v. Wells Fargo Bank International Corp.*, 540 F.2d 548, 558 (2d Cir. 1976). In the present case the letter from plaintiff and TMC to the county clearly would have been sufficient to establish an assignment of the accounts receivable provided TMC also manifested the necessary intent to transfer the accounts receivable and relinquished all control over them and their proceeds. At least the latter requirement, however, has not been met in this case. When the county made payments to plaintiff for work performed by TMC, plaintiff deposited the payments in the collateral account, a bank account maintained in TMC's name. Plaintiff appears somehow to have regulated the transfer of funds from the collateral account to TMC's checking account. Without TMC's consent, however, plaintiff could not use the funds in the collateral account for any purpose other than to satisfy TMC's liability to plaintiff in the event of TMC's default on the loan. Therefore, TMC retained some control over the collateral account. Accordingly, we hold that in August 1974 the taxpayer possessed an interest in the accounts receivable to which the federal tax lien could attach.[4]

■ 2. The remaining question on appeal is whether the federal tax lien has priority over plaintiff's security interest in the fund held by the county. When a private lien is in competition with a federal tax lien, federal law governs the question of their relative priority. *Texas Oil & Gas Corp. v. United States*, 466 F.2d 1040, 1051 (5th Cir. 1972).

Section 6323(c) provides:

To the extent provided in this subsection, even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid with respect to a security interest which came into existence after tax lien filing but which—

(A) is in qualified property covered by the terms of written agreement entered into before tax lien filing and constituting—

(i) a commercial transaction financing agreement, * * * and

(B) is protected under local law against a judgment lien arising, as of the time of tax lien filing, out of an unsecured obligation.

■ When an agreement establishes a security interest in after–acquired property, the security interest does not exist for purposes of § 6323(c) until the debtor has acquired rights in the collateral. *Donald v. Madison Industries, Inc.*, 483 F.2d 837, 843 (10th Cir. 1973).

■ Plaintiff's security interest in the fund held by the county came into existence after tax lien filing: the United States filed notice of the tax lien in August 1974; TMC performed the services for which the fund represents payment and thus acquired rights in the collateral in November and December 1975. Section 6323(c) does not, however, afford plaintiff's security interest priority over the federal tax lien because the security interest is not in "qualified property." The term "qualified property" is defined to include "only commercial financing security acquired by the taxpayer before the 46th day after the date of tax lien filing." § 6323(c)(2)(B). "Commercial financing security" includes accounts re-

---

**4.** Cases in which a taxpayer who had assigned accounts receivable to a creditor was nevertheless held to have retained an interest in the accounts receivable sufficient for a federal tax lien to attach include *United States v. Trigg*, 465 F.2d 1265 (8th Cir. 1972), and *Nevada Rock & Sand Co. v. United States*, 376 F.Supp. 161 (D.Nev.1974).

See also *Gold Coast Leasing Co. v. California Carrots, Inc.*, 93 Cal.App.3d 274, 155 Cal.Rptr.

511 (1979), where the California court of appeals held that a taxpayer's assignment of accounts receivable gave the assignees a security interest subject to California's version of the Uniform Commercial Code. The court, implicitly finding that the taxpayer had retained a property interest in the accounts receivable, then proceeded to determine the relative priority of the assignee's security interest and a federal tax lien.

ceivable. § 6323(c)(2)(C)(ii). None of the accounts receivable at issue here accrued until November 1975. The accounts receivable thus were not "acquired by the taxpayer before the 46th day after the date of tax lien filing" and do not constitute "qualified property" protected by § 6323(c).[5] *See Texas Oil & Gas Corp. v. United States*, 466 F.2d at 1051–52.

The judgment of the trial court is accordingly reversed.

Reversed and remanded.

---

**5.** In 1976, the Minnesota legislature amended § 336.9–301 to provide that

[a] person who becomes a lien creditor while a security interest is perfected takes subject to the security interest only to the extent that it secures advances made before he becomes a lien creditor or within 45 days thereafter or made without knowledge of the lien or pursuant to a commitment entered into without knowledge of the lien.

§ 336.9–301(4). 1976 Minn.Laws ch. 135, § 14. The amendment reflects a change in the official text of UCC § 9–301 made in 1972. The purpose of the 1972 change was to bring the UCC into accord with federal tax law. UCC § 9–312, Draftsman's Statement of Reasons for 1972 Changes in Official Text (5).