FIRST NATIONAL BANK IN
WORTHINGTON, Appellant,

v.

STATE of Minnesota, Respondent.

No. C5–86–1898.

Court of Appeals of Minnesota.

June 2, 1987.

David R. VonHoltum, VonHoltum, Hand, Malters & Shepherd, Worthington, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Paul A. Strandberg, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by LESLIE, P.J., and SEDGWICK and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

The trial court determined that appellant, First National Bank in Worthington, was not entitled to recover from the State of Minnesota under the Family Farm Security Program. On appeal the Bank argues that the trial court erred in finding that the Bank's cancellation of a preceding contract for deed precluded its recovery of the State's guarantee on a subsequent contract for deed. We affirm.

## FACTS

This case was submitted to the trial court on stipulated facts and arises from a series of transactions involving the same parcel of farm land. In July 1973, Albert and Arline Milbrath sold this land to Jerry and Joann Narber on a contract for deed. On April 11, 1975, the Narbers assigned their vendee's interest under the contract to the First State Bank of Lakefield, which later merged with the First National Bank in Worthington. At the same time the Narbers also executed a quit claim deed to the Bank for the same parcel of land. Then in May 1978, while the Bank still held the assignment and quit claim deed, the Nar-

bers once again sold the land to David and Patricia Rentschler on a contract for deed.[1]

The Rentschlers in turn sold the land to Larry and Cynthia Koep on another contract for deed. In addition to the contract for deed the Koeps, the Rentschlers and the State of Minnesota entered into a seller-sponsored loan agreement under the Family Farm Security Program. The agreement provided in part that should the Koeps default on their payments, the Rentschlers could look to the State for fulfillment of the loan obligation.

The Koeps failed to make their contract for deed payment to the Rentschlers that was due December 5, 1983. The Rentschlers also defaulted on their payment under the contract with the Narbers that was due March 1, 1984. In April 1984 the Bank, as assignee of the Narbers, served notice of cancellation of the contract for deed between the Narbers and Rentschlers upon the Rentschlers. Subsequently the Bank made the payments due under the Milbrath/Narber contract for deed and obtained a warranty deed to the property.

On May 7, 1984, the Rentschlers, through their attorney, sent a letter to the Attorney General asking for payment under the guarantee agreement. The letter indicated that the Rentschlers had received notice of cancellation of their contract for deed with the Narbers and that they had advised the Family Farm Security Program of the cancellation. A May 16, 1984, letter from the Attorney General's office to the Bank stated that the guarantee had terminated due to the Rentschlers' default on the underlying contract for deed.

On June 19, 1984, the Rentschlers entered into an agreement with the Bank wherein the Rentschlers agreed to surrender or sell certain collateral. The agreement also provided that the Rentschlers would cooperate in recovering on the contract for deed with the Koeps and collecting the State's guaranteed payment. Subsequently on July 19, 1984, the Bank wrote to the Attorney General noting the statutory 180 day waiting period had ended and demanding the State pay the Bank according to the guarantee agreement with the Rentschlers and Koeps. The State refused, and the Bank brought suit to recover the Koeps' outstanding obligation under the guarantee agreement.

## ISSUE

Is appellant, which was not a party to the original seller-sponsored loan agreement, entitled to enforce the agreement against the State?

## ANALYSIS

The trial court concluded that:

> The bank elected to serve the cancellation notice rather than seeking to recover payment under the contract; therefore, the bank cannot seek to recover any payments due under the contract.

Although our analysis differs from the trial court's, we do agree with the result and affirm on other grounds. *See Cambern v. Hubbling,* 307 Minn. 168, 238 N.W.2d 622 (1976).

The Bank argues that it only canceled the contract for deed between the Narbers and Rentschlers and not the Rentschler/Koep contract for deed. Therefore, the Bank claims it acquired the Rentschlers' rights in their contract with the Koeps and as a result has several remedies available

---

1. We note that in its memorandum the trial court observed that one of the problems with this case was

> the assignment by the Narbers to the bank dated April 11, 1975. If the intent of the parties was to assign to the bank all rights of the Narbers including the right of redemption, the Narbers had nothing to sell to the Rentschlers. Therefore, there was no interest in the contract that the state could guarantee a loan on.
>
> Also, if the bank only had an equitable mortgage on Narbers' vendee interest, then it

must be foreclosed by action and cannot be cancelled by notice as if it were a contract for deed.

The State argues that when it executed the loan guarantee, it was not fully informed of the extent of the Bank's interest in the property and that this material misrepresentation voided the guarantee under Minn.Stat. § 41.56, subd. 5. However, the Bank has not raised this issue on appeal and in view of our resolution of this appeal we need not resolve the issue.

for the Koeps' default, including statutory cancellation of the contract or a claim for the State's guarantee under the Family Farm Security Program.

The agreement with the Bank states:

Rentschlers understand that Bank is cancelling a Contract for Deed running from Rentschlers to Larry and Cynthia Koep. Rentschlers further understand that the debt owed by Koeps to Rentschlers under the terms of the Contract for Deed has been guaranteed by the State of Minnesota under the provisions of the Young Farmers Security Program as such program is set forth in M.S.A. § 41.51–41.61. Rentschlers agree that they will cooperate with Bank in the cancellation of the Contract for Deed and in the process of making a claim for the portion of the debt guaranteed by the State of Minnesota.

The laws relating to transactions guaranteed under the Family Farm Security Program allow for assignment or transfer of the seller's interest. However, there is no evidence in the record before us that constitutes an effective assignment of the Rentschlers' vendor's interest in the contract for deed with the Koeps or of their interest in the seller-sponsored loan agreement with the State.

While no particular language is required for an effective assignment, "an intent to transfer must be manifested and the assignor must not retain any control over the fund or any power of revocation." *Guaranty State Bank of St. Paul v. Lindquist*, 304 N.W.2d 278, 281 (Minn.1980) (quoting *Springer v. J.R. Clark Co.*, 46 F.Supp. 54, 58 (D.Minn.1942), *rev'd on other grounds*, 138 F.2d 722 (8th Cir.1943)).

While the language of the Bank's agreement with the Rentschlers suggests cooperation between them, it also anticipates that the Rentschlers will remain active in the process, which negates a finding of assignment. Further, the agreement states that: "Bank is willing to accept the proceeds of the sale of the collateral in full payment of the debt owed by Rentschlers to Bank." Apparently the parties did not intend an assignment of the Rentschlers'

rights in the seller-sponsored loan agreement to be necessary to the settlement agreement. This factor also negates a finding of an effective assignment because under the terms of the agreement, any assignment would have been without consideration and therefore gratuitous. Finally, the record shows that in an earlier transaction with the Narbers, the parties had executed a formal document entitled "Assignment of Contract for Deed." Even though such a document was available and had been employed by the bank on other occasions, no such document accompanies the settlement agreement.

While not necessary to the resolution of this appeal, we note that the State contends that the loan guarantee was ineffective because the Rentschlers had violated Minn. Rule 1560.3000 by failing to give the State notice of the purported assignment and because they had defaulted on their underlying contract for deed. Rule 1560.3000 provides:

**1560.3000 TERMINATION OF GUARANTEE.**

Subpart 1. **Conditions.** The guarantee will remain in force and effect until maturity of the loan unless default occurs \* \* \* or any of the conditions in items A to C occur:

A. The lender consents to the change or alteration of any of the terms and provisions of the loan, or attempts to waive or waives any rights of the lender, the participant, the commissioner, or the state included in the loan, in a manner inconsistent with the terms of the loan as represented to and approved by the commissioner at the time of delivery of the guarantee, without the written consent and approval of the commissioner.

B. The lender fails to notify the commissioner in writing within 30 days of a transfer or assignment of the loan. The guarantee shall remain in force and effect if the commissioner is notified, provided that the purchaser of the loan assumes all duties and obligations of the original lender and agrees to comply with all the requirements of the laws and rules governing the program.

C. The lender violates any terms, provisions, covenants, or conditions of any document or agreement to which the lender is a party for purposes of the guarantee.

Subp. 2. **Consequences.** In the event that any of the conditions in subpart 1, items A to C occur, where there is substantial evidence that the lender's actions were calculated to defraud the state or misrepresent conditions of the loan, the state may terminate its guarantee and immediately and forever be released from all claims and demands based on the guarantee. If it can be clearly ascertained that the participant had no knowledge of and did not collaborate with the lender's actions, the state may make the payment adjustment directly to the participant.

The Bank argues, however, that under subpart 2 and Minn.Stat. § 41.56, subd. 5 (1984)[2] the loan guarantee could only become ineffective upon a showing of fraud or misrepresentation. While we need not resolve this issue, we note that the potential consequence for a violation of Rule 1560.3000 where no fraud is shown, is unclear.

## DECISION

The trial court did not err in concluding appellant was not entitled to payment under the Family Farm Security Program.

Affirmed.

---

**2.** Subd. 5. **Guarantee void.** The loan guarantee is void only if the guaranteed loan was obtained or retained by fraud or material misrepresentation of which the original lender or subsequent holder had actual knowledge.