**INDEPENDENT SCHOOL DISTRICT
NO. 404, Lake Benton,
Respondent,**

v.

**Dany CASTOR, et al., Appellants.**

No. C3–03–139.

Court of Appeals of Minnesota.

Nov. 4, 2003.

Robert L. Gjorvad, Marshall, for respondent.

Dale G. Swanson, Forest Lake, for appellants.

Considered and decided by KLAPHAKE, Judge, PETERSON, Judge, and HALBROOKS, Judge.

## OPINION

HALBROOKS, Judge.

Appellants argue that the trial court improperly denied them attorney fees under Minn.Stat. § 466.07 (2002), Minn.Stat. § 123B.25(b) (2002), or Minn. R. Civ. P. 37.03. Respondent asked the court to review whether it is entitled to judgment on its conversion claim. While we conclude that Minn.Stat. § 466.07 applies to employer/employee claims, because the trial court did not err in finding that appellants acted in bad faith, they are not entitled to attorney fees under Minn.Stat. § 466.07 or Minn.Stat. § 123B.25(b). Because the trial court did not abuse its discretion in finding that respondent had reasonable grounds to believe that the party might prevail, appellants are not entitled to attorney fees under Minn. R. Civ. P. 37.03. Because there can be no conversion where the property is compensation to the party who allegedly converted it, we again affirm the trial court.

## FACTS

Respondent Independent School District No. 404 (school district) commenced an action against appellants Dany Castor and Judy Castor alleging conversion of $20,123.25. Dany Castor was a part-time principal from 1975 until this action and a part-time superintendent for the school district between 1990 and 2000. His wife, Judy Castor, has been a special education teacher for the school district since 1989.

This matter arises out of the interpretation and application of article XI of the

school district's contract with the Lake Benton Education Association, which provides as follows:

Section 1. Selection: The selection of the insurance carrier and policy shall be made by the school district as provided by law. Consideration will be given to recommendations submitted by the insured group.

Section 2. Health and Hospitalization Insurance: The school district shall contribute a sum of not to exceed $250.00 per month for 1993–1994 and not to exceed $322.00 per month for 1994–1995 toward the premium for coverage for each full time teacher employed by the school district who qualifies for and is enrolled in the school district's group health and hospitalization plan and/or group income protection plan and/or group dental plan or other group intensive care plan. Any additional cost of the premium shall be borne by the employee and paid by payroll deductions.

It is undisputed that the school district never selected a carrier or insurance policy as stated in section 1. Instead, over 20 years, the practice developed that teachers made assignments of their article XI compensation to various insurance products including accident benefits, prepaid insurance benefits, and whole life insurance. While teachers had the opportunity to obtain insurance benefits by the article XI assignments, they could not take the compensation as cash. If a teacher did not assign the money to an insurance product, the unassigned money remained in the school district's general fund.

For the period 1989–1993, Judy Castor did not request an assignment of all her article XI benefits. The school district retained the money for any unassigned amount. From 1994–2000, Judy Castor assigned her article XI benefits to repay loan balances on life-insurance policies in Dany Castor's name for which she was the named beneficiary. Her assignments for that time frame totaled $20,123.25. While Judy Castor's requests for assignments were presented to the school board in the standard manner, Dany Castor, who made the presentation, did not highlight to the board the fact that Judy Castor's article XI benefit was being used to repay loans on his life-insurance policies.

When a new superintendent replaced Dany Castor in July 2000, he questioned the legality of Judy Castor's current assignment request and brought it to the attention of the board. As a result, Judy Castor's request was denied.[1]

The school district subsequently commenced the underlying conversion action against the Castors. The Castors denied the allegations, and Judy Castor filed an answer and counterclaim seeking unpaid wages in the amount of $3,433.44, which represented the article XI benefits she had earned that year. Following a bench trial, the trial court denied the school district's claim for conversion, ordered that Judy Castor be allowed to assign compensation from the 2000–2001 school year to an insurance plan, and ordered a separate hearing for costs, attorney fees, and disbursements. The trial court concluded that Dany Castor violated his fiduciary duty to the school board and that the assignments of the funds were misapplied, but that the funds were not converted because the $20,123.25 was compensation earned by Judy Castor.

The hearing regarding attorney fees, costs, and disbursements was held approximately three months after trial. The court determined that each party should pay its own attorney fees and ordered the school district to pay $3,433.33 as damages

1. This denial became the basis for her counterclaim.

to Judy Castor, the amount of money she would have been able to assign in the 2000–2001 school year.

The school district also sought Dany Castor's immediate discharge from his teaching contract under Minn.Stat. § 122A.40, subd. 13 (2002), on grounds of (1) immoral conduct, (2) conduct unbecoming a teacher, and (3) willful neglect of duty. The matter was submitted to arbitration pursuant to the contract between Dany Castor and the district. In a decision issued within a few days of the court's ruling on fees, the arbitrator denied the school district's proposed discharge of Dany Castor and ordered his reinstatement as a teacher.

Dany and Judy Castor appeal the trial court's denial of their request for attorney fees. The school district appeals the trial court's denial of its conversion claim and award of money damages to Judy Castor on her counterclaim.

## ISSUES

I. Did the trial court wrongly deny the Castors attorney fees pursuant to Minn.Stat. § 466.07 (2002) or Minn. Stat. § 123B.25(b) (2002)?

II. Did the trial court wrongly deny the Castors attorney fees under Minn. R. Civ. P. 37.03 because of the school district's failure to admit that the assignments at issue in the conversion action were compensation earned by Judy Castor?

III. Is the school district entitled to judgment on its conversion claim?

IV. Should the school district's motion to strike the arbitration transcript be granted?

## ANALYSIS

### I.

**A. Minn.Stat. § 466.07 (2002)**

■ The Castors contend that the trial court erred in failing to award attorney fees to them pursuant to Minn.Stat. § 466.07. Minn.Stat. § 466.07 states that

a municipality or an instrumentality of a municipality shall defend and indemnify any of its officers and employees … for damages, including punitive damages, claimed or levied against the officer or employee, provided that the officer or employee:

(1) was acting in the performance of the duties of the position; and

(2) was not guilty of malfeasance in office, willful neglect of duty, or bad faith.

The trial court concluded that Minn.Stat. § 466.07 was not applicable to the Castors' claims for attorney fees because the statute was designed to provide for indemnification of third-party claims. But the court found that, if the statute were applicable, both Castors acted in performance of the duties of their positions but both were guilty of bad faith.

Statutory construction is a question of law, which this court reviews de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 393 (Minn.1998). "A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000). The Castors note that exceptions within a statute will be construed as excluding additional exceptions. Minn.Stat. § 645.19 (2002). Here, Minn.Stat. § 466.07(1), (2), creates exceptions. The exceptions suggest that if the legislature wished to make further limitations, such that the statute would not apply to employer-employee claims, the legislature would have so provided. Because there is no language providing that the claim must be made by a third party,

we conclude that Minn.Stat. § 466.07 is applicable in the context of an employer/employee claim.

■ We next consider whether either of the statutory limitations precludes the Castors from receiving attorney fees. A reviewing court will not reverse a trial court's decision on attorney fees absent an abuse of discretion. *Becker v. Alloy Hardfacing & Eng'g Co.*, 401 N.W.2d 655, 661 (Minn.1987). We agree with the trial court that the record supports a finding that both Castors were "acting in the performance of the duties of the position." The trial court also concluded that, although not guilty of conversion, the bad-faith exception applied to both Judy and Dany Castor. The Castors contend that they did not act in bad faith.

■ First, the Castors argue that the issue of whether Dany Castor engaged in malfeasance, willful neglect of duty or bad faith in office was determined in his favor by the arbitrator. Therefore, Dany Castor contends that the school district was collaterally estopped from raising the issue of bad faith in the context of his claim for attorney fees. Whether a party is estopped from litigating an issue is a question of law subject to de novo review. *Hennepin County v. Hanneman*, 472 N.W.2d 149, 152 (Minn.App.1991), *review denied* (Minn. Aug. 29, 1991). "Collateral estoppel ... precludes parties from relitigating issues which are identical to issues previously litigated and which were necessary and essential to the former resulting judgment." *Aufderhar v. Data Dispatch, Inc.*, 452 N.W.2d 648, 650 (Minn.1990). But the record from the motion hearing on the issue of attorney fees shows that the Castors' counsel argued that none of the three disqualifying behaviors under Minn. Stat. § 466.07—malfeasance, willful neglect of duty, or bad faith—were properly raised by the school district in the trial court.

■ In its order following trial on the conversion issue, the court found that "[t]he Castors concede and the record shows that the assignments [in the record] were beyond the scope of Article XI of the Master Agreement." But the court also found that past practice involving article XI went beyond the Master Agreement's language and permitted teachers to make assignments to many insurance products, including accident benefits, pre-paid insurance benefits and at least one whole-life-insurance product. The court noted that "[the Castors] stated that they were not aware of any other person in the school district assigning their funds to pay off an insurance loan for anyone and not aware of any situation where it was to pay off a loan of a person other than the employee herself." The court further found that the Castors had admitted in a conversation with the new superintendent "that they knew the assignment was wrong, and ... it was because [Dany Castor] had been denied a raise." Based on the evidence, the court concluded that Dany Castor violated his fiduciary duty and that the assignments violated past practice and were handled inappropriately. But the court also concluded that the assignments were compensation belonging to Judy Castor and were, therefore, not converted.

Following the hearing on attorney fees, the court stated in a separate order that

[w]hile this Court found that Dany Castor did not commit the tort of "conversion" it does not necessarily follow that he is not "guilty" of bad faith within the meaning of Minn.Stat. § 466.07. This Court finds that ... the evidence and testimony demonstrates that [appellant] is guilty of bad faith by breaching his fiduciary duty to the school board.

. . . .

Indeed, a superintendent not telling his school board that an assignment belonging to his wife, of a type that he admits the board had never before approved, that financially benefited him personally, is bad faith by definition.

The court also concluded that Judy Castor acted in bad faith, although her position as a teacher differed from that of Dany Castor as a superintendent. Specifically, the court stated, "[t]he fact that Judy Castor gave the assignment requests to the only other person aware of its true nature and the very person who would personally profit from it demonstrates that Dany Castor and Judy Castor acted jointly."

In a footnote in its memorandum accompanying its order on attorney fees, the court responded directly to the Castors' argument that bad faith was not properly raised. The court noted that the evidence brought forth in the trial on the school district's conversion claim dealt specifically with and, in fact, established breach of fiduciary duty, malfeasance, willful neglect of duty, or bad faith. While the court took judicial notice of the arbitrator's decision, although not receiving the arbitration transcript into evidence, the court noted that the standards applied in the two proceedings were not the same, and therefore, a collateral estoppel argument fails. We agree. Because there is nothing in the record to suggest that the trial court's findings and conclusions were clearly erroneous, we affirm the court's decision that the bad-faith exception applies to both Dany and Judy Castor. Although our analysis differs from the trial court's with respect to the applicability of Minn.Stat. § 466.07, we agree with the court's result and so affirm on other grounds. *See Cambern v. Hubbling,* 307 Minn. 168, 171, 238 N.W.2d 622, 624 (1976).

## B.  Minn.Stat. § 123B.25 (2002)

The Castors alternatively contend that the trial court erred in failing to award attorney fees under Minn.Stat. § 123B.25. Minn.Stat. § 123B.25(b) states in pertinent part:

Upon written request of the teacher involved, any district . . . must provide legal counsel for any school teacher against whom claim is made or action is brought for recovery of damages in any tort action involving physical injury to any person or property or for wrongful death arising out of or in connection with the employment of such teacher with the district.

The trial court concluded that Minn.Stat. § 123B.25 on its face does not apply to Dany Castor because he was not a teacher at the time involved in this claim. We agree. With respect to the application of the statute to Judy Castor, we note that this court held in *Queen v. Minneapolis Pub. Sch. Dist.,* 481 N.W.2d 66, 68 (Minn. App.1992), that

[t]he legislature's intent in drafting section 466.07, subdivision 1 was, we believe, to ensure that public funds were not used to defend employees, including teachers, guilty of malfeasance in office. That intent is effectuated only by interpreting section 466.07 to relieve a school district of its duty to defend a teacher under section 127.03 where the teacher is guilty of malfeasance in office.

Because we held that the trial court did not abuse its discretion in finding that the Castors acted in bad faith, we conclude that Judy Castor is precluded from receiving reimbursement for attorney fees pursuant to Minn.Stat. § 123B.25.[2]

**2.** Minn.Stat. § 127.03 was renumbered in 1996 as Minn.Stat. § 123B.25.

## II.

The Castors also claim that they are entitled to an award of attorney fees under Minn. R. Civ. P. 37.03, which states:

If a party fails to admit the genuineness of any documents or the truth of any matter as requested pursuant to Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of any such matter, the requesting party may apply to the court for an order requiring the other party to pay the reasonable expenses incurred in making the proof, including reasonable attorney fees. The court shall make the order unless it finds that

. . . .

(3) the party failing to admit had reasonable ground to believe that the party might prevail on the matter[.]

Choosing to apply sanctions for a failure to comply with discovery is within the trial court's discretion. *Przymus v. Comm'r of Pub. Safety,* 488 N.W.2d 829, 832 (Minn. App.1992), *review denied* (Minn. Sept. 15, 1992). The supreme court has denied a motion for sanctions pursuant to Minn. R. Civ. P. 37.03 where it found that there had been evidence introduced at trial that would have supported a finding contrary to most of the moving party's requests for admission. *Furlev Sales & Assocs., Inc. v. N. Am. Auto. Warehouse, Inc.,* 325 N.W.2d 20, 28–29 (Minn.1982). Here, the trial court found Minn. R. Civ. P. 37.03 "inapplicable because . . . the party failing to admit had reasonable ground to believe that the party might prevail in the matter."

In determining whether the school district had reasonable grounds to believe that it might prevail, we consider that the Castors requested admissions on the following matters:

1. The amount claimed by Plaintiff in its Complaint of $20,123.25 was the subject of a number of assignments made by Defendant Judy Castor of compensation provided for her employment by Plaintiff as a classroom teacher pursuant to Article XI of the LBEA contracts in effect over pertinent times.

2. Defendant Judy Castor satisfied all of her employment performance obligations at times pertinent and earned 100 percent of the compensation provided for her in the LBEA contracts, including that provided in Article XI Ex.51.

The school district denied both requests for admission. The Castors argue that the requests could not rightfully be denied. But the transcript of the motion hearing shows that there was discrepancy as to the meaning of the term "compensation." The school district also provided evidence about the master agreement and about past practice regarding the assignment, in an attempt to prove the school district's interests in any unassigned amounts. Given our standard of review in this matter, we conclude that the trial court acted within its discretion.

## III.

The school district seeks review of the trial court's conclusion that it is not entitled to judgment in the amount of $20,123.25 on its claim for conversion. The school district also argues that the trial court erred in its award of $3,433 to Judy Castor. "Generally on appeal from a judgment where no motion for a new trial was made, the only questions for review are whether the evidence sustains the findings of fact and whether such findings sustain the conclusions of law and the judgment." *Novack v. Northwest Airlines, Inc.,* 525 N.W.2d 592, 596 (Minn. App.1995) (quotation omitted).

Conversion occurs when a person willfully interferes with the personal property of another without lawful justification that deprives the lawful possessor of use and possession. *DLH, Inc. v. Russ,* 566 N.W.2d 60, 71 (Minn.1997). In its conclusions, the trial court relied, in part, on the definition of conversion found in 4A *Minnesota Practice,* CIVJIG 60.65 (1999), which states that property is converted if one party exercises control over the other's personal property so that it (1) is contrary to the owner's right to the personal property, (2) intentionally destroys or changes the personal property, or (3) intentionally deprives the owner of possession. Here, former and current school district employees and board members consistently testified that they considered the article XI benefits to belong to the teachers. Article XI is silent with respect to any amounts that are not assigned. And, as the trial court noted, the "use or lose reference" was not incorporated in the contract, but, rather, developed through practice. Any amounts that had been retained in the past by the school district were "both small and unexpected."

The trial court concluded that the school district was not the owner of the benefits, although it did have a property interest in them. Moreover, the court noted that the school district's claim against the Castors was not premised on any fraudulent representations, but, instead, on "the nondisclosure of the true nature of the assignment." The trial court found that, while the Castors had a fiduciary duty to disclose the true nature of the assignments, the claim was for conversion, not breach of fiduciary duty. Here, the assignment requests were presented to the board in a manner consistent with all other requests. As such, the court concluded that the school district was not deprived of its property interest.

The record as a whole supports these findings and the court's ultimate conclusion that the school district's claim for conversion must be denied.[3] We also affirm the trial court's award to Judy Castor in the amount of $3,433 in article XI benefits to be applied within the terms of article XI and the trial court's conclusion that Judy Castor be allowed to assign the amount to an insurance plan consistent with article XI prior to October 1, 2002.

## IV.

The school district moved this court for an order to strike the arbitration transcript from appellant's appendix. The school district argues that the arbitration transcript should be stricken because the arbitration hearing occurred after the trial on the conversion claim and was not part of the record submitted to the trial court. The school district also contends that a transcript is not an item that must be included in the appendix of the Castors' brief pursuant to Minn. R. Civ.App. P. 130. The Castors assert that the transcript is part of the record because it was attached to the affidavit of Dany Castor's counsel that was filed with the October 2 motion for attorney fees.

An appellate court may not consider matters not "produced and received" in evidence by the trial court. *Thiele v. Stich,* 425 N.W.2d 580, 582–83 (Minn.1988). While the transcript of the arbitration proceeding is included in the trial court file, the trial court stated in footnote 4 of his November 21 order that the court took judicial notice of the arbitration decision, but not the transcript, itself. We interpret that statement to mean that the trial court declined to receive the transcript as evidence. We, therefore, grant the school district's motion to strike.

---

**3.** There is no evidence that Judy Castor in-    tended to relinquish her right.

## DECISION

Because the language of Minn.Stat. § 466.07 (2002) is broad enough to apply to a claim for attorney fees brought in the context of a suit by an employer school district, against an employee, we disagree with the trial court's determination that Minn.Stat. § 466.07 is not applicable here. But because the record supports the trial court's conclusion that the bad-faith exclusion applies to preclude the Castors' entitlement to attorney fees, we affirm the trial court's conclusion that the Castors may not recover for their attorney fees under Minn.Stat. §§ 466.07 or 123B.25(b) (2002). Because the trial court did not abuse its discretion by finding that the Castors are not entitled to fees under Minn. R. Civ. P. 37.03, we affirm on that basis as well. Finally, because the trial court did not err by denying the school district's conversion claim, we affirm.

**Affirmed.**